**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Sylvester v. Neal*, **Slip Opinion No. 2014-Ohio-2926.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2926

THE STATE EX REL. SYLVESTER *v.* NEAL, CLERK.

THE STATE EX REL. FOX ET AL. *v.* WALTERS, CLERK, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Sylvester v. Neal*, **Slip Opinion No. 2014-Ohio-2926.]**

*Writs of mandamus sought to compel clerks of courts and judges to accept surety bonds in all cases where bail is set by the court—Crim.R. 46(A) is unconstitutional insofar as it allows a court to require a bond secured by a 10 percent cash deposit under Crim.R. 46(A)(2)—Bail may be set under Crim.R. 46(A)(2), so long as a surety bond is accepted as an alternative— Writs granted.*

(Nos. 2012-1742 and 2013-0364—Submitted February 25, 2014—Decided July 8, 2014.)

IN MANDAMUS.

_____

**KENNEDY, J.**

{¶ 1}  In these consolidated cases seeking writs of mandamus filed by relators, Anthony Sylvester (relator in case No. 2012-1742), Woodrow L. Fox, and Woody Fox Bail Bonds, L.L.C. (relators in case No. 2013-0364), against respondents, Wayne County Clerk of Courts Tim Neal (respondent in case No. 2012-1742), Licking County Clerk of Courts Gary Walters, Licking County Common Pleas Court Judges David Branstool and Thomas Marcelain, and the Licking County Common Pleas Court (respondents in case No. 2013-0364), we consider whether Crim.R. 46(A)(2) violates Article I, Section 9 of the Ohio Constitution.  Additionally, we consider relator Woody Fox Bail Bonds' request for damages pursuant to R.C. 2731.11.

{¶ 2}  Article I, Section 9 of the Ohio Constitution provides that, with certain exceptions, "[a]ll persons shall be bailable by sufficient sureties."  But under Crim.R. 46(A)(2), a court is permitted to require a defendant to post 10 percent of the bail amount in cash.  We hold that by permitting a court to require a 10 percent cash deposit on a defendant's bond, Crim.R. 46(A)(2) denies the constitutional right of defendants to be "bailable by sufficient sureties" and violates Article I, Section 9 of the Ohio Constitution.

{¶ 3}  However, we decline to award damages to Woody Fox Bail Bonds. The clerk of courts and judges of the Licking County Court of Common Pleas have political-subdivision immunity.  R.C. 2744.01 et seq.  They were acting within the scope of their official responsibilities in setting and enforcing the bail under Crim.R. 46(A)(2).

{¶ 4}  We therefore grant the requested writs of mandamus and deny damages.

**Facts**

**A. Case No. 2012-1742, *State ex rel. Sylvester v. Neal***

{¶ 5} On December 7, 2011, Chris Nickolas, a bail bondsman and an employee of Sylvester's, appeared at the Wayne County Court of Common Pleas and attempted to post a $5,000 surety bond for defendant Shannon Rowe, in case No. 11-CR-0347. Nickolas was informed by a clerk in the office of respondent Tim Neal, the Wayne County clerk of courts, that he could not post a surety bond because Judge Mark Weist required a 10 percent cash deposit on a bail bond. Rowe's family had contacted Nickolas to post the $5,000 bond. Nickolas personally posted the $500 in cash for Rowe in the criminal case so that he could be released from jail. On numerous occasions, Sylvester, Nickolas, or other agents of Sylvester's company had been unable to post a bond with the Wayne County clerk of courts because bail had been set as a bond requiring a 10 percent cash deposit and the clerk's office refused to take a surety bond.

{¶ 6} Sylvester filed this action for a writ of mandamus on October 15, 2012, to compel Neal to accept surety bonds in all cases where bail is set by the court. Neal filed a motion to dismiss, to which Sylvester filed a memorandum in opposition. On February 6, 2013, the court granted the alternative writ, and the parties then filed evidence and briefs.

**B. Case No. 2013-0364, *State ex rel. Fox v. Walters***

{¶ 7} Relator Fox is licensed to issue bail bonds and is the owner of relator Woody Fox Bail Bonds. He asserts that since 2010, the clerk of courts and judges of the Court of Common Pleas of Licking County have refused to accept surety bonds from Fox or his agents when the court had set the bail to include a 10 percent cash deposit on a bond. Fox retained an attorney to inquire about the matter, and the attorney, Gary Rosenhoffer, asked the Licking County prosecuting attorney about the issue. The prosecutor responded that he had contacted the

court and had been told that the court was not planning to change its current practice.

{¶ 8} Fox and Woody Fox Bail Bonds filed this action for a writ of mandamus on March 4, 2013, to compel the clerk and judges of the Licking County Common Pleas Court to accept surety bonds in all cases where bail is set by the court and requesting damages pursuant to R.C. 2731.11.

{¶ 9} On May 22, 2013, we granted an alternative writ and consolidated the case with 2012-1742, and the parties then submitted evidence and briefs.

## Legal Analysis

### A. Mandamus

{¶ 10} To be entitled to extraordinary relief in mandamus, relators must establish a clear legal right to the requested relief, a clear legal duty on the part of the respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Relators must prove that they are entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

{¶ 11} The right that relators assert, the right to be "bailable by sufficient sureties," found in Article I, Section 9 of the Ohio Constitution, belongs to a criminal defendant. However, we have held that a bail bondsman has a sufficient beneficial interest in nullifying a clerk's existing bond policy to bring a mandamus case. *State ex rel. Jones v. Hendon,* 66 Ohio St.3d 115, 119, 609 N.E.2d 541 (1993). Therefore, relators have standing to bring these mandamus actions.

{¶ 12} Relators also lack any adequate remedy in the ordinary course of the law, because a bail bondsman, as a nonparty, cannot petition the court for a bond modification and cannot appeal the denial of a surety bond. Unlike the criminal defendant, a bail bondsman's only remedy is an extraordinary writ.

4

{¶ 13} Lastly, the case is not moot, because the issue of requiring cash deposits is an ongoing one for the bail bondsmen, even though it may not be for an individual defendant.

{¶ 14} The remaining questions are whether relators have a clear right to the requested relief and whether respondents have a clear duty to grant them that relief.

## B. Definitions and history of rejecting cash-only bonds in Ohio

### 1. Bail and surety bonds

{¶ 15} "Bail" is defined as

security for the appearance of an accused to appear and answer to a specific criminal or quasi-criminal charge in any court or before any magistrate at a specific time or at any time to which a case may be continued, and not depart without leave.

R.C. 2937.22(A). Bail may take several forms, including cash and surety bond (the written assurance by one or more persons to forfeit the sum of money set by the court if the accused does not appear). *Id.*

{¶ 16} The sole purpose of bail is to ensure a person's attendance in court. *State ex rel. Baker v. Troutman,* 50 Ohio St.3d 270, 272, 553 N.E.2d 1053 (1990). "Bail ensures appearance. Therefore, the conditions placed on it must relate to appearance and the reasons for forfeiture to nonappearance." *Id.*

{¶ 17} Surety bail-bond agents are regulated under the Department of Insurance, and must be licensed by that agency to sell surety bail bonds. R.C. 3905.83 et seq. A "surety bail bond" is "a court accepted bond instrument from a licensed insurance company issued for or on behalf of an incarcerated person held under criminal charges." Ohio Adm.Code 3901-1-66(C)(3).

**2. History of right to bail and to "sufficient sureties" in Ohio**

{¶ 18} In *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, we reviewed the history of the right to bail in Ohio, and we rely heavily on ¶ 18-51 of that opinion in the discussion that follows.

{¶ 19} Ohio's first Constitution provided in Article VIII, Section 12, that "all persons shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or the presumption great" and provided in Article VIII, Section 13, that "[e]xcessive bail shall not be required." The 1851 Ohio Constitution moved these provisions to Article I, Section 9:

> All persons shall be bailable by sufficient sureties, except for capital offences where the proof is evident, or the presumption great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

The 1851 version of Article I, Section 9 remained effective until January 1, 1998. 1997 Sub.H.J.Res. No. 5, 147 Ohio Laws, Part IV, 9014, 9016.

{¶ 20} To implement the bail provisions, this court adopted Crim.R. 46 in 1973, which provided, before its amendment on July 1, 1998:

> (A) Purpose of and right to bail. The purpose of bail is to ensure that the defendant appears at all stages of the criminal proceedings. All persons are entitled to bail, except in capital cases where the proof is evident or the presumption great.
>
> * * *
>
> (C) Preconviction release in serious offense cases. Any person who is entitled to release under division (A) of this rule shall be released on personal recognizance or upon the execution

of an unsecured appearance bond in an amount specified by the judge or magistrate, unless the judge or magistrate determines that release will not ensure the appearance of the person as required. Where a judge or magistrate so determines, he or she, either in lieu of or in addition to the preferred methods of release stated above, shall impose any of the following conditions of release that will reasonably ensure the appearance of the person for trial or, if no single condition ensures appearance, any combination of the following conditions:

(1) Place the person in the custody of a designated person or organization agreeing to supervise the person;

(2) Place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) Require the execution of an appearance bond in a specified amount, and the deposit with the clerk of the court before which the proceeding is pending of either twenty-five dollars or a sum of money equal to ten percent of the amount of the bond, whichever is greater. Ninety percent of the deposit shall be returned upon the performance of the conditions of the appearance bond;

(4) Require the execution of bail bond with sufficient solvent sureties, the execution of a bond secured by real estate in the county, or the deposit of cash or the securities allowed by law in lieu of a bond.

69 Ohio St.3d CXXXV (effective July 1, 1994).

{¶ 21} The General Assembly also enacted R.C. 2937.22, which explains that bail may take any of the following forms:

(1) The deposit of cash by the accused or by some other person for the accused;

(2) The deposit by the accused or by some other person for the accused in form of bonds of the United States, this state, or any political subdivision thereof in a face amount equal to the sum set by the court or magistrate. In case of bonds not negotiable by delivery such bonds shall be properly endorsed for transfer.

(3) The written undertaking by one or more persons to forfeit the sum of money set by the court or magistrate, if the accused is in default for appearance, which shall be known as a recognizance.

R.C. 2937.22(A).

{¶ 22} Case law on the bail provisions before 1998 makes clear that under the Constitution, citizens have a right to reasonable bail. First, we granted a writ of habeas corpus to compel a trial court judge to set a reasonable preconviction bail for an accused charged with noncapital offenses in *Locke v. Jenkins*, 20 Ohio St.2d 45, 253 N.E.2d 757 (1969). *Locke* recognized that the right to bail under Article I, Section 9 of the Ohio Constitution was absolute, except for capital offenses (other exceptions now apply), and the court concluded that "[t]here is no discretion in the trial court in such matters." *Id.* at 46.

{¶ 23} We also granted a writ of mandamus to compel a court of common pleas to change its bail-bond form, which required sureties to consent to forfeiture of deposited cash or securities to pay fines and costs assessed upon conviction and unsatisfied by the defendant. *State ex rel. Baker v. Troutman,* 50 Ohio St.3d 270, 553 N.E.2d 1053 (1990). *Baker* held that by requiring use of the deposited cash or securities to pay unsatisfied fees and costs, the procedure set forth in the form

constituted excessive bail prohibited by Article I, Section 9 of the Ohio Constitution "because it placed limiting conditions on bail that were unrelated to appearance of the accused." *Id.* at 272. *Baker* held that the constitutional right to "nonexcessive bail on approval of sufficient sureties" was absolute, citing *Locke. Baker* at 271.

{¶ 24} We later reaffirmed *Baker* and *Locke* by finding that the requirement that "[a]ll persons shall be bailable by sufficient sureties" of Article I, Section 9 as applied to noncapital cases "guarantee[d] an accused an absolute right to bail in such cases * * * and to have a surety post bail on his behalf." We held that bail bondsmen were entitled to a writ of mandamus to compel a trial court clerk to accept surety bonds where "cash only" bonds were set. *State ex rel. Jones v. Hendon,* 66 Ohio St.3d 115, 118, 609 N.E.2d 541 (1993).

{¶ 25} In *Jones,* we found that Article I, Section 9 was silent as to the forms that bail may take and that Crim.R. 46(C) vested discretion in the judge to impose any of the rule's five conditions to ensure an accused's appearance. We then examined the fourth condition, former Crim.R. 46(C)(4), under which the court may "[r]equire the execution of bail bond with sufficient solvent sureties, the execution of a bond secured by real estate in the county, or the deposit of cash or the securities allowed by law in lieu thereof." Former Civ.R. 46(C)(4), 52 Ohio St.3d liv (effective July 1, 1990). We concluded that once a judge had chosen the bail amount there was no legitimate purpose in further specifying the form of the bail that may be posted:

> Indeed, the only apparent purpose in requiring a "cash only" bond to the exclusion of the other forms provided in [former] Crim.R. 46(C)(4) is to restrict the accused's access to a surety and, thus, to detain the accused in violation of Section 9, Article I. We found

such a practice inappropriate in *State ex rel. Baker v. Troutman,* supra, and reaffirm that finding here.

Accordingly, we find that where a judge imposes a bond as a condition of release under Crim.R. 46(C)(4), the judge's discretion is limited to setting the amount of the bond. Once that amount is set, and the accused exercises his constitutional right to enlist a surety to post bail on his behalf, that being one of the options set forth in Crim.R. 46(C)(4), the clerk of courts must accept a surety bond to secure the defendant's release, provided the sureties thereon are otherwise sufficient and solvent.

*Jones* at 118. Therefore, under *Jones* and *Baker,* before the January 1, 1998 amendment to Article I, Section 9 of the Ohio Constitution, an accused who was charged with a noncapital offense had an absolute constitutional right to bail by sufficient sureties. A cash-only requirement for bail was unconstitutional.

{¶ 26} In 1997, the General Assembly proposed an amendment to Article I, Section 9 of the Ohio Constitution "to permit a court to not grant bail in certain circumstances to persons who allegedly commit a felony and also pose a substantial risk of serious physical harm to others or to the community." 1997 Sub.H.J.Res. No. 5, 147 Ohio Laws, Part IV, 9014. The amendment was adopted by Ohio voters in the November 4, 1997 general election and took effect January 1, 1998. *Id.* at 9016.

{¶ 27} Article I, Section 9 with the amendment italicized, now provides:

All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, *and except for a person who is charged with a felony where the proof is evident or the*

*presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail.* Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

*The general assembly shall fix by law standards to determine whether a person who is charged with a felony where proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community. Procedures for establishing the amount and conditions of bail shall be established pursuant to Article IV, Section 5(B) of the Constitution of the state of Ohio.*

After the Constitution was amended, the General Assembly enacted R.C. 2937.222, which allows the prosecutor or the judge to move for a hearing to determine whether a person charged with a felony should be denied bail and specifies the evidence that the judge must consider in making that determination.

{¶ 28} In addition, we amended Crim.R. 46 to specify the types of bail that could be set by a court:

(A) Types and amounts of bail. Any person who is entitled to release shall be released upon one or more of the following types of bail in the amount set by the court:

(1) The personal recognizance of the accused or an unsecured bail bond;

(2) A bail bond secured by the deposit of ten percent of the amount of the bond in cash. Ninety percent of the deposit shall be returned upon compliance with all conditions of the bond;

(3) A surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, *at the option of the defendant.*

\* \* \*

(E) Amendments. A court, at any time, may order additional or different types, amounts, or conditions of bail.

(Emphasis added.)

{¶ 29} In *Smith v. Leis,* we interpreted the amendment to Article I, Section 9 and concluded, first, that the new sentence permitting courts to "determine at any time the type, amount, and conditions of bail" does not authorize bail that violates an accused's access to a surety, because doing so "would not give effect to the 'sufficient sureties' clause and would render it nugatory." 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 60.

{¶ 30} Second, we explained that a "surety" is " '[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation,' " *id.* at 62, quoting *Black's Law Dictionary* 1482 (8th Ed.2004), and held that compliance with the constitutional provision that all persons charged "shall be bailable by sufficient sureties" is mandatory, *id.* at ¶ 62.

{¶ 31} Third, we held that when the General Assembly proposed amending Article I, Section 9 in 1998, it intended that *Jones* and *Baker* remain viable precedent. *Smith* at ¶ 63. Fourth, we pointed out that the stated purpose of the amendment was to deny bail to some defendants, "not to limit an accused's access to a surety once bail is granted." (Emphasis deleted.) *Id.* at ¶ 64.

**{¶ 32}** Fifth, we looked at cases from other states with similar constitutional provisions, and concluded that interpretations of those provisions also supported the conclusion that the amendments to Article I, Section 9 did not abrogate earlier case law on the issue of cash-only bail. *Id.* at ¶ 65.

**{¶ 33}** And finally in *Smith v. Leis*, we explained that the amendments to Crim.R. 46 gave courts greater discretion in the factors they could consider in setting bail and the conditions of bail they could impose but did not give greater discretion in the types of bail the courts could set. And, we explained, cash-only bail is a type of bail, not a condition of bail. *Id.* at ¶ 68-73.

## C. Application of *Smith v. Leis* to Crim.R. 46(A)(2)

**{¶ 34}** Relators seem to suggest that Crim.R. 46(A) can be interpreted to mean that the court has the discretion to determine only the amount of bail and the defendant has the option of how to post that bail. But as pointed out by amicus attorney general, the subsections of Crim.R. 46(A) cannot be read as options for the defendant—as opposed to the court—to select. The only way the rule as a whole makes sense is for the court to determine the type of bail. Otherwise, every defendant would choose option (A)(1), which allows personal recognizance or an unsecured bail bond.

**{¶ 35}** Therefore, reconciling the rule and the Constitution by giving the defendant the choice between subsections of Crim.R. 46(A) makes no sense. The trial court judge must have the discretion to determine which of the types of bail to impose on a particular defendant.

**{¶ 36}** Having rejected the interpretation suggested by relators, we now must determine whether Crim.R. 46(A)(2), as written and as being applied by respondents, is unconstitutional.

**D. Constitutionality of Crim.R. 46(A)(2)**

**1.** ***Smith v. Leis* did not address the constitutionality of Crim.R. 46(A)(2)**

{¶ 37} In *Smith v. Leis,* we held that "[c]ash-only bail is unconstitutional under Section 9, Article I of the Ohio Constitution and is not authorized by either Crim.R. 46 or R.C. 2937.222." 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, syllabus. We made sweeping statements in other parts of the opinion that might imply that the bond with a 10 percent cash deposit allowed by Crim.R. 46(A)(2) is permissible under the Constitution. For example, the opinion states that "if we had intended to authorize cash-only bail when we amended Crim.R. 46, we would have so provided with appropriate language." *Id*. at ¶ 71. This implies that the court did not view the requirement of a 10 percent deposit for a bond set under Crim.R. 46(A)(2) as cash-only bail.

{¶ 38} Courts of appeals have certainly interpreted *Smith v. Leis* this way. *Smith v. Leis,* 165 Ohio App.3d 581, 2006-Ohio-450, 847 N.E.2d 485, ¶ 19-23 (a habeas case brought by a different petitioner named Smith in which the court held that this court's holding in *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, was based only on subsection (A)(3) and that subsection (A)(2)'s requirement for 10 percent cash is not cash-only bail); *State ex rel. Williams v. Fankhauser,* 11th Dist. Portage No. 2006-P-0006, 2006-Ohio-1170, ¶ 20-25 (finding that *Smith* addressed only Crim.R. 46(A)(3) and holding that the 10 percent cash requirement of (A)(2) is not cash-only bail).

{¶ 39} However, while *Smith v. Leis,* 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, provides a historical backdrop to the issue in this case and contained some broad statements about the constitutionality of Crim.R. 46, it did not address, nor has any other opinion from this court addressed, the constitutionality of Crim.R. 46(A)(2). Thus, *Smith v. Leis* is not dispositive of the

cases before us today, which specifically challenge the constitutionality of Crim.R. 46(A)(2).

{¶ 40} If the 10 percent cash deposit authorized under Crim.R. 46(A)(2) denies the constitutional right of defendants to be "bailable by sufficient sureties," then the rule must yield to the constitutional provision. As we noted in *Smith v. Leis*, ¶ 72, "even had Crim.R. 46 expressly permitted cash-only bail, it would have violated the sufficient-sureties clause of Section 9, Article I of the Ohio Constitution."

### 2. The rationale for the ban on cash-only bail

{¶ 41} The Constitution does not mention cash-only bail. The purpose of Article I, Section 9 is to ensure that defendants are protected from excessive bail and are "bailable by sufficient sureties." Excessive bail and bail with no access to a surety would prevent many from release pending their criminal trials.

### 3. The cash-only provision in Crim.R. 46(A)(2)

{¶ 42} Crim.R. 46(A)(3), the provision at issue in *Smith v. Leis*, allows release on deposit of "[a] surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, at the option of the defendant." This provision clearly allows the defendant the choice to post a surety bond rather than cash to secure his release pending his criminal trial. As the attorney general points out, requiring cash under Crim.R. 46(A)(3) is clearly not permitted by the rule.

{¶ 43} In contrast, Crim.R. 46(A)(2) explicitly allows a judge to require cash. It allows release on "[a] bail bond secured by the deposit of ten percent of the amount of the bond *in cash*. Ninety percent of the deposit shall be returned upon compliance with all conditions of the bond." (Emphasis added.) Cash is required by the explicit language of the rule, and no option for the defendant is mentioned.

{¶ 44} The question therefore is whether requiring a defendant to pay 10 percent of the bond in cash and refusing to instead accept a surety bond violates the constitutional requirement that defendants be "bailable by sufficient sureties." We hold that it does and that Crim.R. 46(A) is unconstitutional insofar as it allows a court to require a bond secured by a 10 percent cash deposit under Crim.R. 46(A)(2) as the only option, to the exclusion of a surety bond. Bail under Crim.R. 46(A)(2) is still an option if a surety bond is accepted as an alternative. Thus, if a court decides that it will accept the defendant's own bond only if it is secured by a 10 percent cash deposit, it must accept, as an alternative, a surety bond for the full amount of bail, with no deposit required. Crim.R. 46(A)(2) does not state this alternative, as Crim.R. 46(A)(3) does, but the Constitution requires it. As we said in *Jones*, 66 Ohio St.3d 115, 118, 609 N.E.2d 541, "the only apparent purpose in requiring a 'cash only' bond to the exclusion of [other forms of bail] is to restrict the accused's access to a surety and, thus, to detain the accused in violation of Section 9, Article I."

{¶ 45} Because Crim.R. 46(A)(2) gives a defendant no choice but to come up with 10 percent of his bail in cash, it precludes the use of a bond or other surety instrument. The rule therefore denies a defendant's right to be bailable by sufficient sureties. This is not to say that a defendant must use a commercial bonding agent; a constitutionally sufficient surety may include any person who can deposit the cash or post a reliable bond on the defendant's behalf. Nor is it to say that all defendants will need to post a surety bond rather than a bond secured by the deposit of 10 percent cash. But by precluding any method of obtaining release other than cash, Crim.R. 46(A)(2) forecloses the right to be bailable by surety.

{¶ 46} Respondents stress that under Crim.R. 46(A)(2), a defendant will get 90 percent of his posted cash back when he makes his appearances, whereas the bail bondsman will not return any of the defendant's money. But this is

irrelevant. The point is not what happens *after* the criminal trial is over, but whether an eligible defendant can get out on bail *pending* that trial.

{¶ 47} Our concern is in preserving a defendant's constitutional right to be "bailable by sufficient sureties." When a court sets bail under Crim.R. 46(A)(2) and does not allow the defendant to secure a surety bond as an alternative, it denies the constitutional right of the defendant to be "bailable by sufficient sureties." Moreover, in setting bail, it is of no consequence to the court the method by which it is posted. To hold otherwise would run the risk of only wealthy defendants enjoying their constitutional right to be "bailable by sufficient sureties." And contrary to the assertion in the dissenting opinion, in reaching this conclusion, we neither acknowledge nor preserve a constitutional right of business for commercial bail bondsmen. We therefore grant writs of mandamus ordering respondents to accept surety bonds on behalf of criminal defendants for whom bail has been set under Crim.R. 46(A)(2).

E. Damages

{¶ 48} Fox asserts a loss of business as a result of the Licking County respondents' practice of refusing to accept a surety bond when bail is set under Crim.R. 46(A)(2) and estimates damages at $11,450. However, the Licking County respondents have political-subdivision immunity under R.C. 2744.01 et seq. The only exception to this immunity is when (1) the employee acted outside the scope of his official responsibilities, (2) the employee acted with a malicious purpose, in bad faith, or in a wanton and reckless manner, or (3) civil liability is expressly imposed by statute. R.C. 2744.03(A)(6)(a) through (c). None of these exceptions apply currently. The Licking County respondents were acting within the scope of their duties when setting and enforcing bail based on the language of Crim.R. 46(A)(2). Moreover, the Licking County respondents did not act with a malicious purpose, in bad faith, or in a wanton and reckless manner, because they were following the language of a duly promulgated rule and had no way to know

that we would hold it unconstitutional.  Finally, Fox fails to cite any statute that expressly imposes civil liability.  Accordingly, we decline to award damages.

## Conclusion

{¶ 49} Crim.R. 46(A) is unconstitutional insofar as it allows a court to require a bond secured by a 10 percent cash deposit under Crim.R. 46(A)(2) as the only option, to the exclusion of a surety bond.  If a court decides that it will accept the defendant's own bond only if it is secured by a 10 percent cash deposit, it must accept, as an alternative, a surety bond for the full amount of bail, with no deposit required.

{¶ 50} We decline to award damages to relator Fox.  Respondents have political-subdivision immunity.  They were acting within the scope of their official responsibilities in setting and enforcing bail, were following the language of Crim.R. 46(A)(2), and had no way to know that we would hold Crim.R. 46(A)(2) unconstitutional.

{¶ 51} We therefore grant the writs and deny damages.

Writs granted.

O'CONNOR, C.J., and LANZINGER, FRENCH, and O'NEILL, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

———————————

**PFEIFER, J., dissenting.**

{¶ 52} I am unconvinced by the majority opinion's discussion of the effect of the Ohio Constitution's use of the term "sureties" in Article I, Section 9. I do not believe that the term grants bail bondsmen special constitutional status. *See State v. Briggs*, 666 N.W.2d 573, 583 (Iowa 2003) ("To conclude the sufficient sureties clause extends an unfettered right to a commercial bail bondsmen contradicts the language of our constitution as well as historical reality"); *State v. Jackson*, 384 S.W.3d 208, 217 (Mo.2012).  Instead I consider the term to be much more general.

{¶ 53} In this case, the judges required a deposit in cash. Accordingly, defendants were accorded a sufficient surety, even though the requirement does not allow a commercial bail bondsman to be the surety. This practice is constitutional based on Article I, Section 9 of the Ohio Constitution, which states that "the court may determine at any time the type, amount, and conditions of bail." The language could hardly be more straightforward and unambiguous. It confers discretion on the court to set the terms of bail. Nothing in this case suggests that the judges abused their discretion. The conditions set by the judges were not onerous and did not deny bail to those entitled to it. In fact, the conditions set by the judges allow defendants to post bail at a much lower cost than when they use a bail bondsman.

{¶ 54} Whatever we may have said in other cases, for instance, *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, the Constitution is clear on this subject: commercial bail bondsmen do not have a constitutional right to provide surety. The Constitution also does not authorize us to read into the simple language of Article I, Section 9, requirements or rights that are not there.

{¶ 55} The writ of mandamus should be denied. I dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 56} I respectfully dissent.

{¶ 57} It baffles me that we are called upon to resolve a question involving the discretion of a trial court judge in setting bail brought by two bail-bond agents who object to the 10 percent cash bond ordered by the court in two consolidated cases seeking writs of mandamus to compel the Wayne County Clerk of Courts in one case and the Licking County Clerk of Courts in the other case to accept surety bonds in all cases where bail is set by the court.

{¶ 58} We addressed the matter of cash-only bail in *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, and held such bail to be unconstitutional in that it fails to afford an accused the right to bail by sufficient surety. *Id.* at ¶ 66. My view of that holding is that the purpose of bail is to afford the accused the opportunity to be released pending resolution of the case while affording the public reasonable protection from a substantial risk of serious physical harm and reasonably ensuring the accused's appearance at scheduled court hearings. *See* Ohio Constitution, Article I, Section 9 (allowing bail to be denied where a person charged with a felony "poses a substantial risk of serious physical harm to any person or to the community"); *State ex rel. Jones v. Hendon*, 66 Ohio St.3d 115, 118, 609 N.E.2d 541 (1993) (explaining that the only purpose of cash-only bail is to restrict access to a surety and detain the accused); *State ex rel. Baker v. Troutman*, 50 Ohio St.3d 270, 272, 553 N.E.2d 1053 (1990) ("Bail ensures appearance"). A determination by a trial court to set a 10 percent cash bond could be interpreted as failing to afford bail by sufficient surety to an accused, but in my view, that issue is not before us.

{¶ 59} It occurs to me that a 10 percent cash bond favors an accused, because upon making all court appearances, the accused may recoup a portion— 90 percent—of the deposited cash. Therefore, it would be to the benefit of the accused to seek the right to post such a bond. But that is not the issue presented in these cases; here, third parties—the bail-bond agents—challenge the type of bail set by the courts.

{¶ 60} The bail-bond agents seek the business opportunity of posting a surety bond to obtain the release from custody of the accused pending the outcome of the court proceedings. Notably, Nevin P. Keim, who works for Woody Fox Bail Bonds, L.L.C., indicated that a surety charges 10 percent of the bail set by the trial court for a bond, but none of that money is refunded to the accused if all court appearances are made, compared with 90 percent being

refundable on a 10 percent cash bond. Further, upon the failure of the accused to appear for a court proceeding, the court would be able to demand that the surety either pay the entire bond amount or apprehend the accused, and the bondsman would then have the authority to pursue the accused in manners and ways denied even to law enforcement agents. But here, the court is not the party seeking to have the accused post a surety bond to guarantee the appearance of the accused at all court proceedings.

{¶ 61} Resolution of this matter requires common sense and a case-by-case determination of what best suits the objectives of setting bail in the first instance. A blanket one-size-fits-all rule will not meet the goals of setting bail, and when hidden agendas find their way into the administration of justice, injustice most often results.

{¶ 62} To be entitled to writs of mandamus in this case, the relators have the duty to establish that they have a clear legal right to post a surety bond in lieu of a 10 percent cash bond, a clear legal duty on the part of the court clerks to accept that bond, and the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

{¶ 63} In my view, bondsmen have no clear legal right to post a surety bond for another in the first instance—the right to bail belongs to the person accused of a crime. I am persuaded that the proper procedure in a case of this distinction is for the accused to move the court for an alternate form of bail and upon denial, to seek review of the discretion exercised by the court in setting bail by filing a complaint for a writ of habeas corpus. *See State ex rel. Pirman v. Money*, 69 Ohio St.3d 591, 594, 635 N.E.2d 26 (1994) (explaining that a writ of habeas corpus is the proper remedy for a claim of excessive bail and that "mandamus is no longer available in these cases given the availability of habeas corpus").

{¶ 64} Because the parties seeking the writs have no clear legal right to the relief they seek, because an adequate remedy at law exists by way of a motion by an accused to modify the type of bail, and because the proper remedy to challenge excessive bail is by the accused's filing a complaint for a writ of habeas corpus, in my view this case is procedurally flawed and relators have failed to prove entitlement to writs of mandamus. Accordingly, I would deny the writs in both cases.

_____

Patrick L. Cusma, for relator Anthony Sylvester.

Sprankle Carpenter, L.L.C., and Kendra L. Carpenter, for relators Woodrow L. Fox and Woody Fox Bail Bonds, L.L.C.

Daniel R. Lutz, Wayne County Prosecuting Attorney, and Nathan R. Shaker, Assistant Prosecuting Attorney, for respondent Tim Neal.

Kenneth Oswalt, Licking County Prosecuting Attorney, and Amy Brown Thompson, Assistant Prosecuting Attorney, for respondents Licking County Clerk of Court Gary Walters, Licking County Common Pleas Court Judges David Branstool and Thomas Marcelain, and the Licking County Common Pleas Court.

Wesp/Barwell, L.L.C., Gregory P. Barwell, and Quinn M. Schmiege, urging granting the writs, for amici curiae American Bail Coalition, Accredited Surety & Casualty Company, ACIC, Allegheny Casualty Company, American, Contractors Indemnity Company, American Surety, Bail USA, Financial Casualty & Surety, Inc., HCC Surety Group, International Fidelity Insurance Company, Lexington National Insurance Company, Sun Surety Company, and Universal Fire & Casualty Insurance Company.

Michael DeWine, Ohio Attorney General, and Kristopher J. Armstrong, Assistant Attorney General, urging denial of the writs, for amicus curiae Attorney General.

_____