[Cite as *State v. Dowdell*, 2026-Ohio-565.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,             :

                       No. 115919

    v.                                      :

ARMANII DOWDELL,                         :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-707240-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Armanii Dowdell ("Dowdell") appeals the trial court's journal entries holding him without bond and denying his motion to reduce bond under R.C. 2937.222. For the reasons that follow, we affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 2} On November 3, 2025, Dowdell was arrested on allegations of rape.  On November 6, 2025, he was bound over from the Garfield Heights Municipal Court to the Cuyahoga County Court of Common Pleas.  As part of the bindover proceedings, the municipal court set Dowdell's bond at $250,000.  On November 13, 2025, Dowdell made his first appearance in the common pleas court, where the court set his bond at $50,000 and granted a temporary protection order and ordered that Dowdell have no contact with the victim.  The court, sua sponte, scheduled what it referred to as a "no bond hearing" for November 18, 2025.

{¶ 3} On November 18, 2025, Dowdell was indicted for forcible rape with firearm specifications, forcible gross sexual imposition and two counts of kidnapping with firearm specifications.  Dowdell's rape and kidnapping charges are first-degree felonies.  On that same date, the court held its "no-bond hearing" and ruled that Dowdell "is to be held without bond."  On November 21, 2025, Dowdell entered a not guilty plea at arraignment.  On November 24, 2025, Dowdell filed a motion to reduce bond which the court denied on December 11, 2025.

{¶ 4} Dowdell appeals and raises the following assignments of error for our review:

> I.  The trial court erred by denying Dowdell bail without clear and convincing evidence that R.C. 2937.22(B) was satisfied.
>
> II.  The trial court violated Article I, Section 9 of the Ohio Constitution by denying Dowdell bail without proof that he posed a substantial risk to any person or the community.

## II. The Law

### A. Definitions

**{¶ 5}** "Bail is security for the appearance of an accused to appear and answer to a specific criminal . . . charge in any court . . . at a specific time or at any time to which a case may be continued, and not depart without leave."  R.C. 2937.22(A). "Bail may take several forms, including cash and surety bond (the written assurance by one or more persons to forfeit the sum of money set by the court if the accused does not appear)."  *State ex rel. Sylvester v. Neal*, 2014-Ohio-2926, ¶ 15. Additionally, the Ohio Supreme Court has held that the "sole purpose of bail is to ensure a person's attendance in court." *Id.* at ¶ 16.  The words "bail" and "bond" are used interchangeably throughout this opinion.

### B. Hearing on Bail

**{¶ 6}** Pursuant to R.C. 2937.222(A), "[o]n the motion of the prosecuting attorney *or on the judge's own motion* [emphasis added] the judge shall hold a hearing to determine whether an accused person charged with . . . a felony of the first . . . degree . . . shall be denied bail."  The State "has the burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged . . . that the accused poses a substantial risk of serious physical harm to any person or to the community, and . . . that no release conditions will reasonably assure the safety of that person and the community." *Id.*

**{¶ 7}** Under R.C. 2937.222(B), the court cannot deny a defendant bail unless it finds, by clear and convincing evidence, the three factors set forth above.  Under

R.C. 2937.222(C), the court shall consider the following in making its determination:

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including, but not limited to, both of the following:

(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

{¶ 8} Clear and convincing evidence is a "measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

## C. Appellate Standard of Review

{¶ 9} Ohio appellate courts are split on the standard of review concerning a trial court's denial of bail. *See State v. Jackson*, 2021-Ohio-4320, ¶ 34 (8th Dist.) ("In [*State v.*] *Hawkins*, [2019-Ohio-5132 (8th Dist.),] this court recognized that the Eighth District has not yet established the standard of review that applies to a trial court's decision revoking a defendant's bond and denying bail. *Id.* at ¶ 41. A difference of opinion exists among other appellate districts regarding the applicable standard of review. *Id.").* For a thorough discussion of the different standards of review used across Ohio for the denial of bail, *see Jackson* at ¶ 34-40. These standards range from sufficiency of the evidence to de novo to abuse of discretion. *Id.* In *Jackson* in particular, this court found that "regardless of what standard of review this court applies, we find that the trial court erred in revoking appellant's bond and denying appellant's motions for release on bond." *Id.* at ¶ 40.

{¶ 10} Furthermore, the Ohio Supreme Court has not set forth the standard of review we are to apply in this case. *See, e.g., State v. Sowders*, 2022-Ohio-2401, ¶ 16 (1st Dist.) ("Neither this court nor the Supreme Court of Ohio has yet been confronted with determining what standard of review to employ" concerning denying an accused bail.). However, in *DuBose v. McGuffey*, 2022-Ohio-8, the Ohio Supreme Court set forth a standard to apply in habeas actions concerning bail determinations. "[I]n an original habeas action, a court of appeals may receive new evidence and independently weigh the evidence to make its own bail determination." *Id.* at ¶ 16.

{¶ 11} On appeal, Dowdell argues that the *Jackson* approach is suitable here and we should determine that "the trial court's analysis cannot clear any of these standards." The State, on the other hand argues that this court "has punted" the standard-of-review issue previously, and we "should decide on the standard of review that is applicable in an appeal from a no-bail determination." The State urges us to adopt the abuse-of-discretion standard found in habeas actions involving the denial or reasonableness of bail. The case before us is not a habeas action and we are not inclined to follow *DuBose*.

{¶ 12} Rather, we turn to cases that do not necessarily involve bail but do involve "clear and convincing evidence." In *Cross*, the Ohio Supreme Court held that "[w]here the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477. In *State v. Shiebel*, 55 Ohio St.3d 71, 74 (1990), the Ohio Supreme Court cited the *Cross* standard and added the following:

> However, it is also firmly established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge.

*See also In re Z.C.,* 2023-Ohio-4703, ¶ 7-8 (citing the *Cross* and *Schiebel* standards with approval).

**{¶ 13}** We proceed to review this case under the standards set forth in *Cross* and *Schiebel*. *Accord State v. Sowders*, 2022-Ohio-2401, ¶ 28 (1st Dist.) ("We accordingly review the record to determine whether . . . the trial court had sufficient evidence before it to satisfy the clear-and-convincing standard.").

## III. November 18, 2025 Hearing on Bail

**{¶ 14}** On November 18, 2025, the court held what it referred to as a "no-bond hearing." At this hearing, the State said, "[T]his is on the Court's motion. The State isn't asking for no bond." The court responded that, in looking at the statute, the State's burden was "to present evidence in support of no bond." The prosecutor said that she understood and would "prefer that we hold the hearing in front of the presiding judge after the arraignment." The court denied the State's request, concluding that the statute "says that upon the judge's own motion, the judge shall hold. So I think that that's a reference to the judge who put in place the no bond. So I think that should be me."

**{¶ 15}** At this hearing, Garfield Heights Police Lieutenant Todd Cramer ("Cramer") stated that on November 3, 2025, he was assigned to investigate the alleged assault of 14-year-old J.C.[1] According to Cramer, J.C. "stated that she was

---

[1] At the hearing, the court told the prosecutor on the record, "[Y]ou do need to present evidence. You have to have someone testify" and "[T]here should be at least an officer prepared to testify." The trial court's journal entry denying Dowdell bail states that the prosecutor "called . . . Cramer with the Garfield Heights Police Department to testify." Additionally, both the State's and Dowdell's appellate briefs state that "Cramer testified." We note that Cramer was not sworn in before he made his statement at the hearing; therefore, he did not testify. *See* R.C. 2317.30 ("Before testifying, a witness shall be sworn to testify the truth, the whole truth, and nothing but the truth."); Evid.R. 603 ("Before testifying, every witness shall be required to declare that the witness will testify truthfully,

walking from a friend's house east on Valley Lane when she was approached by an African-American male. She stated that the male had displayed a handgun and directed her to an empty apartment on the first floor of the apartment building. Once inside the apartment she stated that he had pointed the gun at her, threatened her, and had her perform oral sex on him until he ejaculated." Cramer additionally stated that J.C. said she did not know the man but that J.C. described the gun he carried.

{¶ 16} According to Cramer, the police detained "males on the scene" at the apartment building and J.C. identified Dowdell "as the male that perpetrated the assault" after "a cold stand was conducted." Cramer stated that Dowdell initially denied "sexual contact with this female," but after being told that J.C. described the gun and had a rape kit performed, he "changed his story and said that he did indeed have sexual conduct with her in the form of oral sex . . . ."

{¶ 17} When questioned by Dowdell's attorney, Cramer stated that Dowdell did not have a criminal record, he was a high school student, he did not flee from police and he cooperated with the investigation. Cramer further stated that the gun had not been found and the results from the rape kit were not available at the time of the hearing.

{¶ 18} The court then stated as follows on the record:

---

by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.").

I don't even see this as a close call. I'm . . . shocked that the State of Ohio would ask for a $50,000 bond in this case. I think the only appropriate bond here is no bond.

The Court has considered the nature and circumstances of the offense charged. This is a rape of a 14-year-old child. There is apparently significant evidence here, certainly well beyond the standard of clear and convincing.

The fact that this defendant ultimately made statements that were in direct conflict with each other, first that he didn't know her, hadn't had sex with her, then that he knew her and had had sex with her.

Just in terms of the seriousness of the event, the fact that a 14-year-old child is walking either to or from school and is taken at gunpoint and forced to have sex with this defendant, I mean I — one of the things we are supposed to look at is the nature and seriousness of the danger to any person or the community that would be posed if this defendant was released. You know, it's tremendous to think how random this crime appears to me. I — there is no way that the Court could say with any confidence that the community would be safe.

Even if we put him on electronic monitor and house arrest, you know, there would still be certain freedoms that a person would be allowed in those circumstances. He could stand out in front of his home and just snatch up the next 14-year-old that walks by.

. . .

I appreciate that one of the things that we are supposed to take into consideration is the defendant's criminal history . . . but I think . . . it's just overwhelmed by the seriousness of the event on the characteristics of the victim here, meaning that she is of such a vulnerable age.

So that's going to be the ruling of the Court. The defendant will be held with no bond.

## IV. Analysis

{¶ 19} In Dowdell's first assignment of error, he argues that there was not clear and convincing evidence in the record to support the factors in R.C. 2937.222(B). In Dowdell's second assignment of error, he argues that the court

violated Article I, Section 9 of the Ohio Constitution by denying bail without proof that he posed a substantial risk to any person or the community. Article I, Section 9 of the Ohio Constitution states, in part, as follows: "All persons shall be bailable by sufficient sureties, except for a person who is charged with a . . . felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." Because it appears that this constitutional provision has been codified in R.C. 2937.222, we address Dowdell's assignments of error together. *See State v. Hawkins*, 2019-Ohio-5132, ¶ 33, 34 (8th Dist.) (asserting that the General Assembly enacted R.C. 2937.222 to conform to § 9, art. I of the Ohio Const.).

{¶ 20} Specifically, Dowdell's argument on appeal that the trial court erred by denying him bail is twofold. First, he argues that the court had "a pre-determined view that bail is never appropriate in 'cases like this'" and "made up [its] mind to deny bail before any evidence was even entered." Second, Dowdell argues that, in any event, the evidence in the record does not support the court's "pre-determined view," and the State failed to present clear and convincing evidence to support the factors in R.C. 2937.222.

{¶ 21} To support his first argument, Dowdell cites the following from the hearing transcript:

> THE COURT: As said, you know, my view of this generally is that when charges come in that are so very serious and alarming and disturbing, whether it's a homicide or rape, you know, some significant violence, that we shouldn't just be intellectually dishonest and set a gazillion dollar bond.

THE STATE: I understand that, Judge, but I'm not asking for that.

THE COURT: Trying to determine . . . is there a bond. And if I think there might not be a bond, I think we ought to use this statute, we ought to hold people without bond.

THE STATE: I understand, I understand your viewpoint, Your Honor, but we're not asking for such a high bond. I think that the bond commissioner set it at $50,000.

THE COURT: This is . . . an allegation that this defendant held a 14-year-old at gunpoint and forced this person to perform oral sex on him. Now there is no way in the world that you can convince me, counselor, that you believe the community would be safe if he comes up with $5,000 and gets out because the bond recommendation is $50,000 case, surety or property. If he gives $5,000 to a bondsman he is out today.

THE STATE: I understand.

THE COURT: There is no way, counselor, I have known you for too long, that you could convince me that you would feel like the community is safe at that point.

THE STATE: I certainly don't believe that no bond would be appropriate either, Your Honor.

THE COURT: I do think when we hear charges like this, and I've done this several times over the course of the week, when we hear charges of people with multiple rape cases and DNA connected in other states to other rapes, we shouldn't risk putting that person back out in the community because they find a cousin with some money to put a bond up for them.

THE STATE: Sure.

THE COURT: And so I appreciate that . . . the prosecutor's office here is maybe concerned oh, no, we're going to have to be putting witnesses on whenever we have an alarming case, I think you ought to build that in. They have got to be prepared to come in when you have cases like this and make arguments within the confines of the rule for a person to be held with no bond because I know you don't want this person released so why not stick your chest out and put some evidence on? Let's have our hearing and we will hold them without bond.

. . .

> THE STATE: I understand your position, Your Honor, so I will put on the lieutenant.[2]

{¶ 22} To support the second part of his argument, Dowdell states that the court based its decision on just one element of the test found in R.C. 2937.222 — namely, "the circumstances of the offense charged warranted denying bail."

{¶ 23} In its appellee brief, the State argues that there was clear and convincing evidence presented at the hearing on all three parts of the test under R.C. 2937.222.

{¶ 24} Upon review, we find sufficient evidence in the record for the court to have found clear and convincing evidence that: 1) Dowdell committed the offenses associated with the rape of J.C. because J.C. identified him as the perpetrator after the incident and he admitted to sexual conduct with J.C.; 2) Dowdell posed "a substantial risk of serious physical harm" based on J.C.'s age and J.C.'s statements to Cramer that Dowdell forced her to perform oral sex on him at gunpoint; and 3) no release conditions will reasonably assure the safety of the victim and the community because the court found that, if placed on an electronic monitor and house arrest, he could "just snatch up the next 14-year-old that walks by."

{¶ 25} Our review of case law reveals only two direct appeals in which this court analyzed the merits of a decision to revoke or deny bond under R.C. 2937.222.

---

2 We note that, at this point in the hearing, the court and the bond commissioner reminded Cramer to speak into the microphone to ensure his voice was "picked up" because there was no court reporter.

We note that there are additional cases from the Eighth District Court of Appeals involving original actions, also known as writs, stemming from R.C. 2937.222 and cases involving bail denial in which this court did not reach the merits for procedural reasons. The two meritorious cases follow.

**{¶ 26}** In *State v. Jackson*, 2021-Ohio-4320 (8th Dist.), the trial court sua sponte revoked the defendant's bond in one case after he was charged with a felony in a subsequent case. *Id.* at ¶ 16, 29. On appeal, this court reversed the trial court's decision, finding that "the trial court erred in revoking appellant's bail and denying appellant's request for release. The state did not present any evidence pertaining to the R.C. 2937.222 factors, and as a result failed to meet its burden of proof." *Id.* at ¶ 49.

**{¶ 27}** In *State v. Hawkins*, 2019-Ohio-5132 (8th Dist.), this court affirmed the trial court's decision to revoke the defendant's bond and deny him pretrial bail. *Id.* at ¶ 54, 55. In *Hawkins,* the defendant was charged with aggravated vehicular homicide after he allegedly "drove with a blood-alcohol content of .199, went through a red light at a high rate of speed, and collided with another vehicle, killing its driver." *Id.* at ¶ 4. The *Hawkins* Court found that the trial court's findings were clearly supported by the record based on a police officer's testimony, data from the defendant's vehicle showing his speed of 71 m.p.h. and his failure to apply the brakes prior to impact, motorist-eyewitnesses, a toxicology report, police reports and the defendant's emails showing mental-health issues.

{¶ 28} We find this case more akin to *Hawkins* than *Jackson*, because the State presented evidence going toward the R.C. 2937.222 factors. Upon review, we find sufficient evidence in the record, in the form of Cramer's statements, to support the trial court denying Dowdell bail under R.C. 2937.222. Furthermore, we may not substitute our judgment for that of the trial court. Additionally, although the trial court's comments that could be seen as "pre-determining" its ruling are certainly not the best practice, Dowdell failed to cite law showing that this is error. The test remains whether there is sufficient evidence in the record to support the trial court's clear-and-convincing findings under R.C. 2937.222, and that is the test applied here. Accordingly, Dowdell's first and second assignments of error are overruled

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR