[Cite as *State v. Justice*, 2023-Ohio-435.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                        :

      Plaintiff-Appellee,                        :             No. 22AP-234
                                                                                      (C.P.C. No. 20CR-3470)
v.                                                           :
                                                                           (ACCELERATED CALENDAR)
                                                             :

Monica G. Justice,                               :

      Defendant-Appellant.                     :

                                                             :

---

D E C I S I O N

Rendered on February 14, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee.

**On brief:** *Monica G. Justice*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Monica G. Justice, appeals from a judgment of the Franklin County Court of Common Pleas denying her pre-trial release on bail. For the foregoing reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 30, 2020, a Franklin County Grand Jury indicted appellant on four counts of felonious assault in violation of R.C. 2903.11, felonies of the first degree, and two counts of having a weapon while under disability, in violation of R.C. 2923.13, felonies of the third degree. Three-year firearm specifications accompanied each of the four felonious assault charges. Seven-year specifications also accompanied those charges based on the fact that the victims were police officers.

{¶ 3}   On March 21, 2022, plaintiff-appellee, State of Ohio, filed a motion pursuant to R.C. 2937.222, seeking an order denying appellant bail. On March 24, 2022, the trial court held a hearing on the motion. At the hearing, Special Agent Richard Ward of the Bureau of Criminal Investigation testified he was the lead investigator following an incident that occurred on July 21, 2020 at appellant's Beulah Road residence. According to Ward, a Special Weapons and Tactics ("SWAT") team was dispatched to appellant's residence in order to serve a warrant issued by the Franklin County Probate Court. Ward testified that officers had previously attempted to serve the warrant on July 17, 2020, but appellant was not home. According to Ward, appellant had also been involved in a disturbance at a medical office on July 17, 2020 which lead to her arrest.[1]

{¶ 4}   Ward told the trial court that approximately one month before the incident on July 21, 2020, local authorities unsuccessfully attempted to serve an eviction notice at the Beulah Road residence. According to Ward, appellant sent numerous threatening correspondence to local authorities following the attempted eviction. Appellant also made videos which she posted on YouTube containing threats against the same local authorities. Ward informed the trial court that appellant had a prior conviction related to an assault on a police officer that occurred at the Franklin County Municipal Court.

{¶ 5}   According to Ward, the SWAT team arrived at appellant's residence and knocked on the door, but appellant did not answer. The SWAT team subsequently breached the door to the front porch and announced their presence. Appellant suddenly "appeared and discharged a nine-millimeter Carbine rifle striking two of the deputies." (Mar. 24, 2022 Tr. at 14.) Ward testified the first shot deflected off a shield at "eye level," but that another deputy was hit by a shot in the back as he retreated. (Mar. 24, 2022 Tr. at 14.) Deputy Marcus Penwell was struck by three bullets, two in his left calf and one in his waist. Another deputy was struck in the left thigh. Appellant received a gunshot wound to her wrist as officers returned fire. A standoff lasting several hours subsequently ensued during which appellant posted more videos to YouTube evidencing her irrational distrust of government and law enforcement. Appellant eventually made her way to the roof of the home after the SWAT team employed tear gas. Appellant was then taken into custody. Ward interviewed

---

[1] Appellant's partner, Rae Justice, submitted an affidavit wherein she averred that appellant was at the medical appointment on July 17, 2020 when several individuals from the Franklin County Sheriff's Office arrived at the Beulah Road residence attempting service on appellant.

appellant at the hospital after the incident and she told him she knew that law enforcement had entered her front porch and that she intended to shoot them.

{¶ 6}   Deputy Penwell sustained a permanent injury as a result of being shot by appellant and was forced to retire. Penwell submitted a statement, which was read into the record, expressing his fear for the safety of any member of the public or law enforcement who may encounter appellant if she were freed on bail.

{¶ 7}   The evidence also showed that appellant had lived with her mother at her mother's Beulah Road residence for eight years prior to this incident, appellant is self-employed, and that she provides care for her mother.  Appellant's mother, Judy Greer, testified for appellant at the bail hearing. She told the trial court that appellant is married to Rae Justice, but that Rae no longer lives in the Columbus area. Appellant did not testify at the bail hearing, but she submitted an unsworn statement pertaining exclusively to her arrest at the medical building on July 17, 2020.

{¶ 8}   On March 28, 2022, the trial court granted the state's motion to deny bail upon finding, by clear and convincing evidence, that the proof is evident or the presumption great that appellant committed the charged offenses, she poses a substantial risk of serious physical harm to persons or the community, and no release conditions will reasonably assure the safety of any person or the community if she were freed on bail.

{¶ 9}   Appellant timely appealed to this court from the March 28, 2022 judgment.

## II.  ASSIGNMENTS OF ERROR

{¶ 10}  Appellant assigns the following as trial court errors:

> [1.]  The Ohio Constitution Article I, Section 9 - Bail, which the Supreme Court of Ohio decision Dubose v. McGuffey No. 2021-1403 cited a[n] ORC 2937.222, et al., states its legislative language is unconstitutional due to cross referenced section Ohio Constitution Article IV Section 5(b), with emphasis lower case 'b', being missing, no longer existing, being obfuscated, vacated by constitutional convention action(s), purportedly.

> [2.] The application of Ohio Constitution Article I Section 9 under ORC 2937.222, et al., which seeks to keep persons charged with a felony imprisoned without bail, is unconstitutional and not a power granted to the general assembly and/or the judicial officers as Administrative Judge by the Ohio Constitution regardless of unconstitutional

vacancies created by the constitutional amendment process (see error 1), purportedly.

[3.] Under ORC 2937.222, et al., which seek to keep persons charged with a [f]elony potentially imprisoned indefinitely without bail, bond, owed to determinations that such 'defendants' pose a substantial risk of serious harm to persons or the community violates [f]ederally established positive law, Cooper v. Morin, 49 N.Y.2d 69, 81 (1977). Cert. denied subnom, as cited in Lombard v. Cooper, 446 U.S. 984 (1988) and the central tenet and maxim of our republic law of one being held 'innocent until proven guilty' by a jury of ones peers pursuant to 'due process of law' (4th, 5th, 6th Amendments) and those not subjected to slavery, * * *, and/or punishment until such time as one is found guilty of a crime (13th and 14th Amendments).

[4.] The application of Ohio Constitution Article I Section 9 under ORC 2937.222, with its added legislative language concerning the proof or presumption that 'the accused committed' the offense charged and thus allows for a determination of 'presumptive guilt' without the benefit of 'due process of law', violated the 4th, 5th, [and] 6th Amendment.

[5.] Seizing, suspension of it without proof, pursuant to 'due process of law' of an actual breach of a statute is a violation of the full faith [and] credit clause of the Federal constitution (Article 4 Section 1)(28 USC 1738).

[6.] Facts have been held off the record, either by the Clerk of Franklin and/or by the administrative Judge David Young which are exculpatory and mandated the discharge of the cause of action as early as October of 2021, where the obstruction of such evidence, tampering of such evidence has denied Relator as:lotus:justice 'due process of law' [and] perpetuated an unsubstantiated prosecution and an illegal unlawful imprisonment. Additionally such exculpatory evidence is still fraudulently being withheld off the record of the case and as such presents a fraudulent case record upon appeal which interferes with the counsel for Defendants ability to address all aspects [and] errors being affected, effected by said established facts, as evidence obstructs.

[7.] The facts as established during the testimony of both State and defense witnesses, prove, provided evidence supporting 2901, et al., and of the unlawful execution of said probate. As such, administrative Judge David Young should have denied

the Stat's motion to hold the defendant without bail or bond since the facts supported 'self defense', provide that not offense punishable by the laws of the State was committed (ORC 2941.57(A)), as no valid "warrant", and, or 'probate order' can be produced by the State substantiating their breach of said property by lawful means in compliance with the 4th Amendment upon an evidentiary hearing, trial, subpoena, etc..

[8.] In the holding of a propria personam (pro per) litigant without bond or bail, that litigant as counsel for the defense, a right pursuant to the 6th Amendment [Faretta v. California, 422 U.S. 806] is being obstructed by the conditions of imprisonment from the exercise of 'due process of law' where in Relator as-lotus:justice and asserted such obstructions and unconstitutional conditions orally, multiple times, during hearings held prior to May 24 [and] 28, 2022. Knowing that any oral request for modification of the bail, bond, order of commitment was founded upon such assertions, averments, when Administrative 'judge' david young did revoke, rescind, seize the bail, bond and continue the imprisonment of as-lotus:justice as counsel for the Defense indefinitely, pending the Defenses preparedness for a trial. Defense cannot prepare for properly owed to the unconstitutional conditions as-lotus:justice is being subjected to; he did knowingly deny the relator's due process of law' and oppress obstructions to the Relators 6th Amendment willfully and ultimately effected an 'indefinite detention' sentence upon her in lieu of her inability to prepare a proper defense under the conditions of commitment without bail she is held under.

(Sic Passim.)

## III. STANDARD OF REVIEW

{¶ 11} A trial court's order denying bail to a defendant under R.C. 2937.222 is reviewed for an abuse of discretion. *State v. De La Cruz*, 10th Dist. No. 21AP-516, 2022-Ohio-4293, ¶ 10, citing *State v. Foster*, 10th Dist. No. 08AP-523, 2008-Ohio-3525. *See also State v. Henderson*, 10th Dist. No. 16AP-870, 2017-Ohio-2678, ¶ 5. An abuse of discretion occurs when a court's decision is unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 5, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## IV. LEGAL ANALYSIS

{¶ 12} For purposes of clarity, we shall consider appellant's assignments of error out of order.

## 1. Appellant's Third, Fourth, Fifth, Sixth, and Seventh Assignments of Error

{¶ 13} In appellant's third, fourth, fifth, sixth, and seventh assignments of error appellant challenges the weight and credibility of the evidence in support of the decision to deny bail. Accordingly, we shall consider these assignments of error jointly.

{¶ 14} The Ohio Constitution provides that "[a]ll persons shall be bailable by sufficient sureties, * * * except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." *De La Cruz* at ¶ 12, quoting Ohio Constitution, Article I, Section 9. The Constitution requires the General Assembly to set standards by law to " 'determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community.' " *Id.*, quoting Ohio Constitution, Article I, Section 9.

{¶ 15} Pursuant to constitutional authority, the General Assembly enacted R.C. 2937.222, which provides in relevant part as follows:

> (B) No accused person shall be denied bail pursuant to this section unless the judge finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense described in division (A) of this section with which the accused is charged, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community.[2]

---

[2] Crim.R 46 entitled "Pretrial Release and Detention," provides in pertinent part as follows:

> **(A) Pretrial detention**. A defendant may be detained pretrial, pursuant to a motion by the prosecutor or the court's own motion, in accordance with the standards and procedures set forth in the Revised Code.
> **(B) Pretrial release**. Unless the court orders the defendant detained under division (A) of this rule, the court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process.

{¶ 16} "Clear and convincing evidence is that 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Foster* at ¶ 6, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 17} The first required finding under R.C. 2937.222 is that the proof is evident or the presumption great that the accused committed the offenses of violence charged in the indictment. Here, appellant's assault on law enforcement was witnessed by numerous Sheriff's deputies who were interviewed by Ward, and appellant admitted her intent to shoot the deputies when she spoke to Ward at the hospital. Though appellant has alleged the shooting was in self-defense, the evidence presented by the state at the bail hearing reveals the SWAT team entered onto the premises for the purpose of serving a lawful warrant issued by the probate court. *See* R.C. 2901.05(B)(2) (The presumption of self-defense arises only "if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence * * * occupied by the person using the defensive force."). Though appellant asserts that the probate court order was subsequently "expunged," she does not deny that such an order existed on July 21, 2020. (Mar. 24, 2022 Tr. at 84.) In fact, appellant purportedly read from the probate court order as she cross-examined Ward. Concerning appellant's argument that the probate court order was obtained illegally, we recognize "the good-faith exception to the exclusionary rule when officers act in good faith upon a search warrant ultimately found to be invalid." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 42, citing *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), at paragraph one of syllabus, and *State v. George*, 45 Ohio St.3d 325 (1989), paragraph three of the syllabus. Ward testified that his investigation revealed deputies acted in good faith on July 21, 2020.

{¶ 18} Based on the foregoing, we find the trial court did not abuse its discretion in concluding that the state demonstrated, by clear and convincing evidence, the proof is evident or the presumption great that the accused committed the offenses of violence charged in the indictment.

{¶ 19} With regard to the second and third findings required for denial of bail, the statute mandates consideration of the following:

The judge, in determining whether the accused person * * * poses a substantial risk of serious physical harm to any person or to the community and whether there are conditions of release that will reasonably assure the safety of that person and the community, shall consider all available information regarding all of the following:

(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

(2) The weight of the evidence against the accused;

(3) The history and characteristics of the accused, including, but not limited to, both of the following:

(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 20} The trial court found, by clear and convincing evidence, appellant poses a substantial risk of serious physical harm to persons or the community and there are no conditions of release that will reasonably assure the safety of any person or the community. The evidence presented at the bail hearing and the relevant case law support the trial court's finding.

{¶ 21} This district has considered the denial of bail under circumstances similar to those presented herein. In *Foster*, 2008-Ohio-3525, the defendant, Foster, was a suspect in an illegal gambling operation when police officers attempted to serve a "knock and announce" warrant related to drug activity at that location. *Id*. at ¶ 11-12. Though Foster later claimed he did not hear police officers identify themselves before attempting to breach the door, others who were gambling with Foster shouted they were being robbed. *Id*. at ¶ 12.

Foster alleged that one of the other gamblers fired a gun toward the door and police officers returned fire. Foster was also armed, and he fired several gunshots toward the door. *Id.*

{¶ 22} Foster was subsequently charged with felonious assault with firearm specifications and additional specifications based on the fact that the victims were police officers. The state moved for an order denying bail pursuant to R.C. 2937.222. At the evidentiary hearing on the motion, it was revealed that Foster had no prior convictions. The trial court nevertheless denied bail upon finding that the state had proven, by clear and convincing evidence, each of the requirements of R.C. 2937.222.

{¶ 23} In affirming the denial of bail on appeal, this court noted that Foster was in a known gambling house and could be imputed with knowledge that drug dealers also frequented the house. *Id.* at ¶ 18. We also noted Foster was arrested after attempting to flee through a basement window. *Id.* Even though Foster claimed he did not hear the officer's announcement, this court concluded that evidence Foster fired gunshots at a door through which police officers were attempting to enter and serve a search warrant supported the trial court's finding that Foster presented a danger to others and the community. We also noted that "[t]he fact that the victims were police officers raises serious questions as to the safety of officers who would seek to apprehend [Foster] in the future if he did not voluntarily appear for trial or sentencing." *Id.* at ¶ 19.

{¶ 24} Other districts have considered the denial of bail to an offender who has discharged a firearm at a police officer and have reached the same conclusion regarding bail. For example, in *State v. Brown*, 6th Dist. No. E-06-025, 2006-Ohio-3377, a detective assigned to a county drug force was awakened by a gunshot that came through his bedroom window. Brown was subsequently charged with various crimes arising out of the incident, including complicity to commit felonious assault on an officer in violation of R.C. 2923.03. The court of appeals agreed with the trial court that the evidence supported a great presumption that Brown was guilty of the crime because a cell phone was found at the scene and witness testimony placed Brown at the officer's house just prior to the shooting. *Id.* at ¶ 3. The court of appeals also noted that Brown and his co-defendant had drug convictions and/or charges stemming from previous investigations by the victim's law enforcement agency, and both were found two blocks from the shooting in a van containing an empty holster and gunshot residue. The court of appeals concluded that the denial of bail was

reasonable under circumstances where a perpetrator engages in conduct prohibited by R.C. 2923.03. The court reasoned that a willingness to discharge a weapon at law enforcement unquestionably creates a "substantial risk" of harm to the community. *Id.* at ¶ 23, citing R.C. 2901.01(A)(8) (defining "substantial risk"). Based on this evidence, the court of appeals affirmed the trial court's decision to deny bail.

{¶ 25} Similarly, in *State v. Nash*, 3d Dist. No. 16-22-06, 2023-Ohio-51, witnesses testified that the defendant, Nash, stood in the street in his underwear and fired numerous gunshots into an occupied residence where the deceased victim was found, and that Nash pointed a rifle at a responding police officer and fired a shot before fleeing. The firearm was later recovered in a search of Nash's residence after police apprehended him in his front yard. Nash was in possession of a firearm and a knife at the time of the arrest, and he was subsequently indicted on multiple charges including murder and discharging a firearm at a police officer. The trial court denied bail following an evidentiary hearing. The trial court noted that it could "envision no release conditions which would assure the safety of officers and the community as given the mental health issue of the accused, his willingness to carry, * * * and fire a weapon at a police officer." *Id.* at ¶ 4.

{¶ 26} On appeal, Nash contended the evidence did not support the conclusion that he posed a substantial risk of harm to the public because his firearms had been confiscated. The court of appeals disagreed, noting that Nash could obtain other weapons if freed on bail. In affirming the trial court, the court of appeals concluded that Nash's unresolved mental health issues, his disturbing behavior on arrest, and the apparent lack of a motive for his crimes, permitted a reasonable conclusion that Nash remains a danger to the community and that no conditions of release would reasonably assure public safety.

{¶ 27} Here, the facts developed at the evidentiary hearing are every bit as egregious as the facts in *Foster*, *Nash*, and *Brown*. Here, appellant intentionally fired numerous rifle shots at sheriff's deputies who were serving a warrant. She then engaged in a standoff with the SWAT team lasting several hours and she surrendered to authorities only after being forced to the roof of the home when the SWAT team shot tear gas into the residence. Appellant also made violent threats to authorities both in writing and in various YouTube videos in the days leading up to the July 21, 2020 incident, and during the incident itself. Thus, it is reasonable to conclude from the evidence admitted at the hearing that the nature

and circumstances of the offenses of violence charged against appellant and appellant's documented hostility toward law enforcement in the recent past weigh heavily against bail.

{¶ 28} Moreover, in addition to the alleged mental health issues that precipitated the probate court order, Ward testified that appellant exhibited an irrational distrust of government and police when he interviewed her at the hospital after this incident. In his statement, Deputy Penwell opined that "Ms. Justice would be a threat to law enforcement and anyone she may encounter if she is released on bond." (Mar. 24, 2022 Tr. at 79.) The record further demonstrates that appellant exhibited a disturbing pattern of behavior leading up to the incident with the SWAT team, including a recent arrest due to a disturbance at a medical building and a prior arrest for an assault on a police officer at the Municipal Court. The trial court expresses concern that, given appellant's prior interactions with the government authorities and police, a SWAT team may need to be dispatched to appellant's residence to return her for trial if she were freed on bail.  The evidence shows the trial court's concerns are well founded as appellant admittedly opened fire on the members of the SWAT team on July 21, 2020 with the intention to shoot the deputies, and has made recent, well-documented threats of violence against government authorities and law enforcement. Thus, the record supports the trial court's determination, by clear and convincing evidence, that appellant poses a substantial risk of serious physical harm to persons and the community, and there are no conditions of release that will reasonably assure the safety of any person and the community if she were freed on bail.

{¶ 29} Based on the foregoing, we hold the trial court did not abuse its discretion when it granted the state's R.C. 2937.222 motion and denied appellant bail. Appellant's third, fourth, fifth, sixth, and seventh assignments of error are overruled.

## 2. Appellant's First and Second Assignments of Error

{¶ 30} In appellant's first and second assignments of error, appellant argues that Article I, Section 9, Ohio Constitution is unenforceable and therefore, R.C. 2937.222 is unconstitutional because Article I, Section 9 makes a reference to Ohio Constitution Article IV, Section 5(b), which does not currently exist. We disagree.

{¶ 31} Article I, Section 9, Ohio Constitution provides in relevant part as follows:

> All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person

who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. * * * The General Assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community. *Procedures for establishing the amount and conditions of bail shall be established pursuant to Article IV, Section 5(b) of the Constitution of the state of Ohio.*[3]

(Emphasis added.)

{¶ 32} Appellant did not raise her constitutional argument in the trial court and has waived all but plain error for purposes of appeal. *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 28, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15-16. Moreover, appellant does not explain how an allegedly erroneous reference to Article IV, Section 5(b) would render Article I, Section 9, Ohio Constitution unenforceable or make R.C. 2937.222 unconstitutional.

{¶ 33} It is clear that the reference to Article IV, Section 5(b) in Article I, Section 9, pertains exclusively to the procedural rulemaking authority of the Supreme Court with respect to the amount and conditions of bail, not denial of bail. It is also evident that the purpose of the preceding language in Article I, Section 9, is to "permit a court to not grant bail in certain circumstances to persons who allegedly commit a felony and also pose a substantial risk of serious physical harm to others or to the community." *State ex rel. Sylvester v. Neal*, 140 Ohio St.3d 47, 2014-Ohio-2926, ¶ 26. Indeed, Article I, Section 9, effectively authorizes the General Assembly expand the types of offenses and circumstances under which bail could be denied. *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, ¶ 38, and *Sylvester* at ¶ 27. The General Assembly subsequently enacted R.C. 2937.222, "which allows the prosecutor or the judge to move for a hearing to determine whether a person charged with a felony should be denied bail and specifies the evidence that the judge must consider in making that determination." *Sylvester* at ¶ 27. Consistent with Article I, Section

---

[3] Though Article IV, Section 5(B) appears to be the correct reference, Article I, Section 9 refers to Article IV, Section 5(b), with the lower case "b." The last sentence of Article I, Section 9 was removed by amendment effective November 8, 2022.

9, Crim.R. 46(A) now provides that "[a] defendant may be detained pretrial, pursuant to a motion by the prosecutor or the court's own motion, *in accordance with the standards and procedures set forth in the Revised Code.*" (Emphasis added.)

{¶ 34} Based on the foregoing, we perceive no merit in appellant's challenge to the enforceability of Article I, Section 9, Ohio Constitution or the constitutionality of R.C. 2937.222. Appellant's first and second assignments of error are overruled.

### 3. Appellant's Eighth Assignment of Error

{¶ 35} Appellant's eighth assignment of error appears to challenge the trial court's order based on alleged due process violations committed by the Franklin County Sheriff's Office in connection with appellant's pre-trial confinement. More particularly, appellant contends she has been denied meaningful access to the law library and evidentiary materials she believes are necessary for her to prepare an adequate defense. We note appellant raised these concerns at the outset of the bail hearing, whereupon the trial court offered to continue the hearing to allow appellant to better prepare. Appellant declined the offer and elected to proceed. Thus, to the extent that alleged due process violations by the Franklin County Sheriff's Office have any relationship to the trial court's determination of the state's motion to deny bail, appellant expressly waived the alleged violations by failing to raise them in the trial court.

{¶ 36} Accordingly, appellant's eighth assignment of error is overruled.

### V.  CONCLUSION

{¶ 37} Having overruled appellant's eighth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

_____