[Cite as *State v. S.D.D.*, 2023-Ohio-4040.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-171 |
| v. | : | (C.P.C. No. 23CR-420) |
| [S.D.D.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 7, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, S.D.D., appeals from an order of the Franklin County Court of Common Pleas denying her oral motion for pre-trial release on bail and granting the motion of plaintiff-appellee, State of Ohio, to hold her without bail. For the following reasons, we reverse and remand for further proceedings.

**I. Facts and Procedural History**

{¶ 2} On January 11, 2023, appellant was charged in the Franklin County Municipal Court for one count of murder, in violation of R.C. 2903.02(A), arising from the death of her 8-month-old son, M.S. At appellant's initial appearance on January 17, 2023, the municipal court set bail at $1.5 million, with additional conditions of no possession of firearms, no future acts or threats of violence, and no contact with all minor children. Upon motion of the prosecutor, the municipal court dismissed the case on January 26, 2023

because appellant had been indicted by the Franklin County Grand Jury on January 25, 2023. *State v. Dawson*, Franklin M.C. No. 23CRA-484.[1]

{¶ 3} The indictment alleged that on January 9, 2023, appellant committed involuntary manslaughter, in violation of R.C. 2903.04, a first-degree felony, in causing the death of M.S. as the proximate result of committing or attempting to commit the offense of child endangering. The indictment also charged appellant with three counts of child endangering, in violation of R.C. 2919.22, with two counts charged as felonies of the third degree and one count charged as a felony of the second degree. The second-degree felony count and one of the third-degree felony counts alleged that the child endangering was committed as part of a course of criminal conduct occurring in Perry and Franklin Counties from November 9, 2022 to January 8, 2023. The indictment also charged co-defendant K.L.M., appellant's live-in boyfriend, with the same offenses.

{¶ 4} On January 27, 2023, the state filed a motion, pursuant to R.C. 2937.222, seeking an order denying appellant and K.L.M. bail or bond. The trial court held a hearing on the motion on February 2, 2023. At the outset of the hearing, the state represented that the parties had agreed to a joint hearing for appellant and K.L.M.; the trial court confirmed that agreement on the record. Appellant and K.L.M. were represented by separate counsel at the hearing. The state presented testimony from Columbus Division of Police ("CPD") Detective Darren Egelhoff, the lead investigator in the case. The state presented no additional witnesses or evidence. Neither appellant nor K.L.M. testified or presented other witness testimony or evidence.

{¶ 5} Detective Egelhoff offered the following testimony. On January 9, 2023, CPD was summoned by the Franklin County Coroner's Office to the home shared by appellant and K.L.M. on Hiawatha Street. Detective Egelhoff was advised that appellant had called 911 at 6:30 p.m. to report that M.S. was not breathing and M.S. was transported to Nationwide Children's Hospital. Testing and x-rays revealed M.S. had at least 12 "healing fractures," several "acute injuries," and exhibited physical signs of shaken baby syndrome. (Tr. at 6-8.) Medical personnel opined that the "healing fractures" were likely inflicted two to four weeks prior to January 9, 2023 and had never been treated; the "acute injuries" were

---

[1] By journal entry filed June 26, 2023, this court granted appellant's motion to supplement the appellate record with the record from Franklin County Municipal Court case No. 2023CRA-484.

likely inflicted on January 9, 2023. (Tr. at 9-10.) M.S. succumbed to his injuries and was thereafter taken to the coroner's office. Preliminary results of the coroner's autopsy revealed the cause of M.S.'s death as blunt force trauma to the head. The autopsy further revealed that M.S. suffered a subdural hemorrhage (brain bleed), bruising to the scalp and head area, and a laceration to the stomach. (Tr. at 8.) The coroner ruled M.S.'s death a homicide.

{¶ 6} Appellant and K.L.M. were transported to CPD headquarters for questioning on January 9, 2023; neither were arrested at that time. Both voluntarily submitted to interviews and surrendered their cell phones. Detective Egelhoff told the couple he would try to return their cell phones the next day. At the conclusion of the interviews, CPD officers returned appellant and K.L.M. to their home.

{¶ 7} Detective Egelhoff's investigation into M.S.'s death revealed that appellant was M.S.'s biological mother and K.L.M. was appellant's live-in boyfriend. The couple moved into the Hiawatha residence approximately two weeks prior to the incident on January 9, 2023. For several months prior to their move to Franklin County, they resided with appellant's father in Perry County. At the time of M.S.'s death, appellant's other two children, ages two and three, and K.L.M.'s three-year-old child, lived in the home; no other adults resided there. Neither appellant nor K.L.M. have any family in Franklin County. Appellant's father and grandmother live in Perry County; K.L.M. has no familial ties to Ohio.

{¶ 8} Detective Egelhoff's investigation further revealed that appellant's children, including M.S., were in Georgia visiting their biological father from August 4 until November 9, 2022, at which point they were returned to appellant in Perry County. During the course of its investigation into M.S.'s death, Franklin County Children Services ("FCCS") received medical records from a Georgia pediatrician indicating that all three children had been examined on October 27, 2022; none exhibited any medical problems.

{¶ 9} Forensic examination of appellant's and K.L.M.'s cell phones revealed that in text messages sent from November 9, 2022 to January 9, 2023, appellant and K.L.M. discussed "beating the kids' asses [and] beating them with belts." (Tr. at 11.) In one of the text messages, appellant stated that "her hand was so red from smacking one of the children." (Tr. at 12.) In another text message on December 1, 2022, appellant told K.L.M.

to "[t]ear [S's] ass up again when you get here." (Tr. at 27.) The forensic examination of the cell phones further revealed that appellant was home on January 9, 2023 and that K.L.M. had searched the internet between 10:00 a.m. and 11:15 a.m. that morning using phrases such as "what to do if a baby's not breathing," "baby's not eating," "[w]hat does it mean if nine month old is breathing regular but won't wake up," "[w]hat does it mean nine month old eyes are watery but not opening and drooling," and "[e]ight month old eyes shut, not moving when trying to open." (Tr. at 13, 25-26.)

{¶ 10} Following completion of the cell phone forensic examination, CPD Detective Lemmon, along with an FCCS employee, went to the Hiawatha address to return the cell phones, deliver FCCS paperwork, and speak with appellant and K.L.M.; however, no one was at home when Detective Lemmon arrived. Neighbors reported they had not seen appellant or K.L.M. following their return from the police interview on January 9, 2023. Appellant and K.L.M. were eventually located at appellant's father's home in Perry County on January 13, 2023; they were arrested and returned to Franklin County.

{¶ 11} Following M.S.'s death, K.L.M.'s son went to live with his biological mother in Michigan; appellant's other two children were placed in emergency custody with appellant's grandmother in Perry County.

{¶ 12} Detective Egelhoff was cross-examined by both defense counsel. During cross-examination, Detective Egelhoff provided more detail regarding the circumstances leading to the arrest of appellant and K.L.M. In that regard, Detective Egelhoff testified that an arrest warrant was issued for appellant and K.L.M. on January 11, 2023. Detective Egelhoff was unaware of the couple's whereabouts after they were returned to their home on January 9 until January 13, 2023. That morning, he and other CPD officers traveled to appellant's father's home in Perry County to question him about appellant and K.L.M. relevant to the time they resided with him. Appellant's father initially declined to speak to officers. Approximately 20 minutes later, the officers went to the home of appellant's grandmother. Shortly thereafter, the grandmother received a FaceTime message from appellant's father indicating that appellant and K.L.M. were at his home and were prepared to surrender to law enforcement. Appellant and K.L.M. were taken into custody that day.

{¶ 13} Detective Egelhoff also testified during cross-examination that on January 9, 2023, both appellant and K.L.M. were employed at a company that provided "babysitting"

services for developmentally disabled individuals; Detective Egelhoff noted that no complaints of abuse had been reported against either appellant or K.L.M. in connection with this work. Detective Egelhoff further testified that the other three children who lived in the Hiawatha home were examined after M.S.'s death; no injuries or signs of abuse were reported. Detective Egelhoff also averred that he was unaware of any FCCS cases or filings involving any of the children; he had not yet received any information from Perry County Children Services.

{¶ 14} Following Detective Egelhoff's testimony, the trial court permitted counsel for the parties to present oral argument. To that end, the state noted the requirements set forth in R.C. 2937.222 regarding the denial of bail and the testimony provided by Detective Egelhoff relevant to those statutory requirements. In addition to recounting Detective Egelhoff's testimony, the state noted that a records search revealed appellant had no prior criminal history; K.L.M. had a misdemeanor weapons conviction in Michigan. Noting the serious nature of the charges, the potential prison term of 25 to 30.5 years, and the lack of ties to Franklin County, the state urged the trial court to deny appellant and K.L.M. bail pending trial. Alternatively, the state requested the trial court set bond in excess of $1 million.

{¶ 15} Also noting the requirements regarding the denial of bail set forth in R.C. 2937.222, counsel for K.L.M. and appellant each pointed to the portions of Detective Egelhoff's testimony favorable to their client in arguing that the trial court should deny the state's motion and set a reasonable bond. In addition, counsel for appellant noted that because appellant was currently six months pregnant, holding her in jail pending trial was unnecessary.

{¶ 16} At the conclusion of the hearing, the trial court stated:

> Well, I appreciate all of the arguments today and the testimony. And based upon the testimony that I've heard and the nature of the charges and the potential sentences in this case, I think there is clear and convincing evidence that there is just cause to hold these defendants without bond at this time. So I'm going to order that, and I am noting that this is an offense of violence with a very substantial sentence. So we'll hold them with no bond for the time being at least.

(Tr. at 51.)

{¶ 17} On February 28, 2023, the trial court issued the following order in appellant's case:

> The matter is before the Court on [appellant's] oral motion for bond, heard on February 2, 2023. [Appellant's] motion is hereby **DENIED.**

(Emphasis sic.) (Order at 1.)

## II. Assignments of Error

{¶ 18} Appellant timely appeals and assigns the following two assignments of error for our review:

> [I.] The lower court erred by granting the prosecution's motion that Appellant be held without bail when the court failed to make all necessary findings required by R.C. 2937.222(B) and when it failed to consider all the factors found in R.C. 2937.222(C). The denial of bail under these circumstances violated Appellant's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 1, 9, and 16 of the Ohio Constitution, R.C. 2937.222, R.C. 2937.23, R.C. 2937.32, and Crim.R. 46.

> [II.] The lower court erred by granting the State's motion that Appellant be held without bail when its ruling was not supported by the sufficiency of the evidence and ran against the manifest weight of the evidence which violated Appellant's rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, Article I, Sections 1, 9, and 16 of the Ohio Constitution, R.C. 2937.222, R.C. 2937.23, R.C. 2937.32, and Crim.R. 46.

## III. Analysis

{¶ 19} "A trial court's order denying bail is a final appealable order under R.C. 2937.222(D)(1) and it is considered by this court on an expedited basis pursuant to R.C. 2937.222(D)(1)(a) through (d)." *State v. Burney*, 10th Dist. No. 14AP-354, 2014-Ohio-2622, ¶ 6, citing *State v. Foster*, 10th Dist. No. 08AP-523, 2008-Ohio-3525, ¶ 6. An order denying bail pursuant to R.C. 2937.222 is reviewed for an abuse of discretion. *State v. Justice*, 10th Dist. No. 22AP-234, 2023-Ohio-435, ¶ 11, citing *State v. De La Cruz*, 10th Dist. No. 21AP-516, 2022-Ohio-4293, ¶ 10, citing *Foster. See also State v. Henderson*, 10th Dist. No. 16AP-870, 2017-Ohio-2678, ¶ 5; *Burney* at ¶ 6. An abuse of discretion occurs when a

trial court's decision is unreasonable, arbitrary, or unconscionable. *De La Cruz* at ¶ 10, citing *Henderson* at ¶ 5, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} "The Ohio Constitution provides that ' "[a]ll persons shall be bailable by sufficient sureties * * * except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." ' " *Justice* at ¶ 14, quoting *De La Cruz* at ¶ 12, quoting Ohio Constitution, Article I, Section 9. "The [Ohio] Constitution requires the General Assembly to set standards by law to ' "determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community." ' " *Id*. at ¶ 14, quoting *De La Cruz* at ¶ 12, quoting Ohio Constitution, Article I, Section 9. In accordance with this constitutional mandate, the General Assembly enacted R.C. 2937.222.

{¶ 21} R.C. 2937.222(A) provides that on motion of the prosecuting attorney or on the judge's own motion, the judge shall hold a hearing to determine whether an accused charged with certain offenses, including first- and second-degree felonies, shall be denied bail. "[T]he state has the burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222(A).

{¶ 22} R.C. 2937.222(B) further provides that no accused person shall be denied bail unless the judge "finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense described in [R.C. 2937.222(A)] with which the accused is charged, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community."[2] " 'Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought

---

[2] At the time of the proceedings in this case, Crim.R. 46(A) provided that "[a] defendant may be detained pretrial, pursuant to a motion by the prosecutor or the court's own motion, in accordance with the standards and procedures set forth in the Revised Code."

to be established." ' " *De La Cruz* at ¶ 15, quoting *Foster* at ¶ 6, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 23} R.C. 2937.222(C) provides that in determining whether an accused person poses a substantial risk of serious physical harm to any person or to the community and whether there are conditions of release that will reasonably assure the safety of that person and the community, the judge "shall consider all available information regarding all of the following":

> (1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;
>
> (2) The weight of the evidence against the accused;
>
> (3) The history and characteristics of the accused, including, but not limited to, both of the following:
>
> (a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;
>
> (b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

{¶ 24} In her first assignment of error, appellant argues the trial court abused its discretion in denying her bail because the trial court failed to make the necessary findings by clear and convincing evidence as required under R.C. 2937.222(B) and failed to consider the factors set forth in R.C. 2937.222(C). The state responds that the trial court did not abuse its discretion because the trial court "[a]fter considering the evidence, * * * considered all factors required from R.C. 2937.222 and the evidence clearly and convincingly supports the trial court's finding that the Appellant should be held without bail." (Appellee's Brief at 15.)

{¶ 25} We cannot glean from either the trial court's statement made on the record at the conclusion of the February 2, 2023 hearing or the order issued by the trial court on February 28, 2023 that it complied with the requirements of R.C. 2937.222 in denying appellant bail. The trial court has not provided sufficient detail to enable meaningful appellate review.

{¶ 26} We first note the trial court referenced none of the criteria required by R.C. 2937.222(B) either on the record at the hearing or in its order. This court's decisions support a conclusion that in order to deny bail to an accused, a trial judge must make the findings set forth in R.C. 2937.222(B). *Justice* at ¶ 17, 19 (referring to the "required" findings set forth in R.C. 2937.222(B)); *De La Cruz* at ¶ 17, 18 (denoting the R.C. 2937.222(B) factors that "must be established" or are "required" for denial of bail); *Foster* at ¶ 9, 16 (referencing the factors "to be considered" under R.C. 2937.222); *Burney* at ¶ 29 (stating that the trial court "made all of the required findings").

{¶ 27} Further, in its oral pronouncement, the trial court indicated that it based its denial of bail on the nature of the charges, that the offense was one of violence, and that appellant was potentially facing a very substantial sentence. While the nature of the offense, including whether it is an offense of violence, is one of the R.C. 2937.222(C) factors a trial court must consider in making the second and third findings under R.C. 2937.222(B), we reiterate that the trial court referenced none of the three criteria required by R.C. 2937.222(B). Further, the nature of the offense is only one of the R.C. 2937.222(C) factors the trial court must consider. There is no indication in the record that the trial court considered any of the other factors set forth in R.C. 2937.222(C). In addition, the potential sentence an accused faces is not one of the findings required under R.C. 2937.222(B) or one of the factors to be considered under R.C. 2937.222(C). Finally, we note that the court's reference to "just cause" to hold appellant without bail is without statutory derivative.

{¶ 28} Consequently, we sustain appellant's first assignment of error to the extent we remand this case to the trial court with instruction to make findings required, pursuant to R.C. 2937.222(B), after considering all the available information presented regarding the factors outlined in R.C. 2937.222(C) so as to allow meaningful appellate review.

{¶ 29} Based on our disposition of appellant's first assignment of error, appellant's second assignment of error is rendered moot.

## IV. Conclusion

{¶ 30} Accordingly, appellant's first assignment of error is sustained and her second assignment of error is rendered moot, the judgment of the Franklin County Court of Common Pleas is reversed and this matter is remanded to that court for further proceedings consistent with law and this decision.

*Judgment reversed,*
*and cause remanded.*

BEATTY BLUNT, P.J., and JAMISON, J., concur.