[Cite as *State v. Nash*, 2023-Ohio-51.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 16-22-06

    v.

MELVIN E. NASH, JR.,

                                   **O P I N I O N**

    DEFENDANT-APPELLANT.

---

Appeal from Wyandot County Common Pleas Court
Trial Court No. 22-CR-0086

**Judgment Affirmed**

**Date of Decision:** January 9, 2023

---

APPEARANCES:

    *Adam Charles Stone* **for Appellant**

    *Douglas Rowland* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary judgment entry. Defendant-appellant Melvin E. Nash ("Nash") brings this appeal from the judgment of the Wyandot County Common Pleas Court denying him bail. Nash argues on appeal that the evidence was insufficient to find that bail should be denied. For the following reasons, the judgment is affirmed.

{¶2} On July 13, 2022, the Wyandot County Grand Jury indicted on one count of murder in violation of R.C. 2903.02(A) with a firearm specification, one count of felonious assault in violation of R.C. 2903.11(A) with a firearm specification, and four counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), each with a firearm specification. Doc. 1. The trial court arraigned Nash on July 14, 2022. Doc. 10. Nash entered pleas of not guilty to all charges. Doc. 10. A bond hearing was held on July 21, 2022, at which the State requested that Nash be held without bail. Tr.4. The State presented the testimony of Detective Lieutenant Kerwin Wisely ("Wisely") of the Wyandot County Sheriff's Office. Wisely testified that based upon Nash's actions, he was charged with murder, discharging a gun at a police officer and discharging a gun into a home. Tr. 6-7. Wisely testified that in his opinion, Nash posed a substantial risk of serious physical harm to the community. Tr. 7. The investigation

showed that the shooter stood in the street and fired into a residence where the victim was found, dead from multiple gunshot wounds. Tr. 8. Witnesses placed Nash at the scene and observed him firing the weapon. Tr. 8. The weapon was then found at Nash's home. Tr. 8. Officer Demetrius Bell ("Bell") arrived at the scene after reports of a man walking down the street in his underwear. Tr. 9. Upon seeing Bell, the man raised a rifle and fired at Bell. Tr. 9. Later, Deputy Austin Shannon ("Shannon") found Nash in the yard in front of a home holding a handgun and a knife. Shannon ordered Nash to drop the weapons, which Nash did before approaching Shannon. Tr. 9. Approximately 47 shell casings were found in the street area with more found in the grass and sidewalk. Tr. 11. Wisely testified that the shooter fired between 47 and 60 shots. Tr. 12. Wisely also testified that approximately 15 shots were fired inside Nash's house towards the doors. Tr. 13. Based upon the investigation, it appeared that Nash was shooting at the doors because he believed law enforcement was "coming to get him." Tr. 14. Bell later identified Nash as the man who shot at him. Tr. 18.

{¶3} On cross-examination, Wisely admitted that Nash was not a danger to anyone at the time of the hearing because he did not have a gun. Tr. 15. Wisely also admitted that they do not know for sure that Nash's guns, which were confiscated, were the ones fired in the street as the ballistic tests were still pending. Tr. 15. However, he believed Nash was still a danger to the community, even

without a firearm. Tr. 16. Wisely based this opinion on Nash's unknown mental state. Tr. 17. Wisely admitted that Nash had no criminal history. Tr. 17.

{¶4} Following Wisely's testimony, the State argued that Nash was a danger because even though the guns had been removed from his home, he could obtain them elsewhere and he had been randomly firing at houses which likely led to the death of the victim. Tr. 20. The State was concerned about potential drug issues, as substances suspected to be drugs were found in Nash's home, and about Nash's mental health since Nash was found walking down the street in his underwear. Tr. 21. The trial court focused on the fact that Bell identified Nash as the one who fired upon him and that Nash appeared to have mental health issues. The trial court then stated that it could "envision no release conditions which would assure the safety of officers and the community as given the mental health issue of the accused, his willingness to carry, uh, and fire a weapon at a police officer." Tr. 24-25. The trial court did not even address the murder charge. The trial court then denied bond to Nash. Doc. 11. Nash appealed from this judgment and on appeal raises the following assignment of error.

> **The trial court erred in ordering [Nash] to be held without bond given that:**
>
> **(a) there was insufficient evidence to find by clear and convincing evidence that [Nash] posed a substantial risk of serious physical harm to any person or the community, and**

**(b) there was insufficient evidence to find by clear and convincing evidence that the [sic] no release conditions would reasonably assure the safety of that person or the community.**

{¶5} The sole assignment of error challenges the sufficiency of the evidence in deciding to deny bail.

> **No accused person shall be denied bail pursuant to this section unless the judge finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense described in division (A) of this section with which the accused is charged, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community.**

R.C. 2937.222(B). Thus, the statute requires this Court to determine if there was clear and convincing evidence sufficient to show that 1) the proof is evident or the presumption is great that the defendant committed the charged offense, 2) the defendant poses a substantial risk of serious physical harm to any person or the community, and 3) no release conditions will reasonably assure the safety of that person and the community.

> **To date, Ohio courts have not reached a consensus on the appropriate standard of review for an appellate court to apply when reviewing a trial court's decision under R.C. 2937.222. This court has characterized the issue as whether there was "sufficient evidence presented by which the [trial] court could have formed a firm belief or conviction in support of its finding[s]." *State v. Brown*, 6th Dist. Erie No. E-06-025, 2006-Ohio-3377, ¶ 25. The Tenth District, however, has applied an "abuse of discretion" standard of review. See *State v. Henderson*, 10th Dist. Franklin No. 16AP-870, 2017-Ohio-2678, ¶ 5; *State v. Foster*, 10th Dist.**

> **Franklin No. 08AP-523, 2008-Ohio-3525, ¶ 6. And the Eleventh District has applied a mixed standard of review, similar to that which governs review of a trial court's ruling on a motion to suppress; specifically:**
>
> **[I]n reviewing factual determinations of the trial court, an appellate court reviewing a motion to deny bail is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo.**
>
> **_State v. Urso_, 11th Dist. Trumbull No. 2010-T-0042, 2010-Ohio-2151, ¶ 47.**
>
> **Recent decisions by the Second and Eighth Districts have applied all three standards of review, finding consistent results in each case. See _Mitchell_ at ¶ 24 (concluding that conflicts in standards of review did not need to be resolved, as the trial court's decision was correct under any of the three standards); _State v. Hawkins_, 8th Dist. Cuyahoga No. 109097, [2019-Ohio-513] , ¶ 47 (finding that appellant's assignment of error should be overruled "regardless of the standard of review we apply"); _State v. Jackson_, 8th Dist. Cuyahoga No. 110621, ¶ 40 (finding that, "regardless of what standard of review this court applies," the trial court erred in revoking appellant's bond).**

_State v. Blackshear_, 6th Dist. Lucas No. L-21-1141, 2022-Ohio-230, ¶ 13-14. To date, this Court has not reached a determination as to which of these standards of review is the appropriate one. This Court has no need to resolve the conflict amongst the other districts in this case as the trial court's determination was correct under _any_ of these articulated standards of review.

{¶6} In this case, Nash specifically challenges the sufficiency of the evidence, thus that is the issue we will review. The first question is whether there

was sufficient evidence to prove that Nash likely committed the offenses charged. Although the ballistics had not confirmed that Nash's shots killed the victim that resulted in the murder charge, the testimony was that there were witnesses who saw Nash firing his weapon from the street and it appeared some of the bullets entered the residence where the decedent was found. Additionally, testimony was provided that Bell identified Nash as the one who fired a rifle at him, which accounted for the felonious assault charge. Wisely testified that numerous bullets were discharged inside Nash's home in the direction of the front and back doors. This testimony provides clear and convincing evidence that the proof is evident or the presumption great that Nash likely committed the offenses charged.

{¶7} The second issue is whether Nash presents a substantial risk of serious physical harm to a specific person or to the community at large. The testimony at the hearing showed that Nash appeared to have mental health issues as he was walking down the street in his underwear and firing a weapon over a distance. At this stage of the investigation, no evidence was presented at the hearing that indicated Nash's behavior was targeting the decedent specifically. Instead, Nash's actions appeared to be random. When Bell tried to approach Nash, Nash fired on him. Also, the testimony was that Nash appeared to be firing at the doors of his home in an apparent attempt to prevent law enforcement from apprehending him. He was eventually apprehended in his front yard holding a gun and a knife. This

behavior is such that one reasonably could conclude that Nash is a danger to the community at large.

{¶8} The third issue that this Court must review is if there are any conditions of release that would reasonably assure the safety of the community. Nash argues that he was no longer a danger once law enforcement confiscated his firearms. However, this does not address the question of the defendant's potential mental health issues. When the police arrested Nash, he was not only holding a firearm, but also a knife. The mere fact that law enforcement took the guns found at Nash's house does not mean Nash could not still cause serious physical harm to members of the community or law enforcement, either with a new firearm or some other weapon. No motive for these offenses was presented at the hearing from which the trial court could determine that Nash would not likely act in a similar manner in the future. Additionally, no evidence was presented to show that the trial court's concern regarding Nash's alleged mental health issues had been addressed. Given the evidence before it, this Court finds that the trial court did not err in determining that bail was not appropriate in this case. The assignment of error is overruled.

{¶9} Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgment of the Wyandot County Common Pleas Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**