[Cite as *State v. Smith-Parks*, 2025-Ohio-2877.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 25AP-409 |
| | | (C.P.C. No. 25CR-2200) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Kailee J. Smith-Parks, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 14, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee. **Argued:** *Benjamin A. Tracy*.

**On brief:** *Larry S. Petroff*, for appellant. **Argued:** *Larry S. Petroff*.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1}  Defendant-appellant, Kailee J. Smith-Parks, appeals from a judgment of the Franklin County Court of Common Pleas ordering her to be held without bail pending trial pursuant to R.C. 2937.222.  For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  On April 25, 2025, a Franklin County Grand Jury returned an indictment charging Smith-Parks, and her boyfriend, Linwood E. Allison, Jr., with one count of aggravated murder (without a death penalty specification), one count of murder, and 22 counts of endangering children.  The charges arose from the death of Smith-Parks' four-year-old son, J.S.

{¶ 3}   On April 28, 2025, Smith-Parks was arrested.  The next day, plaintiff-appellee, State of Ohio, filed a motion for the trial court to hold her without bail pursuant to R.C. 2937.222.  At her arraignment, Smith-Parks pleaded not guilty, and she was held without bail pending the bond hearing set for May 8, 2025.

{¶ 4}   The bond hearing was held as scheduled.  In support of its motion to hold Smith-Parks without bail pending trial, the state presented the following testimony from Reynoldsburg Police Department Detective Nicholas Rubenstahl.  Detective Rubenstahl was assigned to investigate the hospitalization and death of J.S.  J.S. presented to the hospital on April 10, 2025, in very poor condition, and it was evident that he would not survive.  After J.S. passed away, a coroner examined his body and reported that he died of blunt force trauma with subdural hematomas.  The coroner's report also indicated J.S. had brain injuries, optic nerve hemorrhages, hypothermia, and malnourishment.

{¶ 5}   After Detective Rubenstahl learned that J.S. resided in an apartment with his mother, Smith-Parks, and her boyfriend, Allison, the authorities searched this apartment and discovered a Ring surveillance camera inside J.S.'s bedroom.  Detective Rubenstahl recovered three weeks of video that camera recorded, spanning from March 21, until April 10, 2025, the day J.S. was taken to the hospital.  Four detectives reviewed all the footage from those recordings.  Detective Rubenstahl generally testified that the footage showed both Smith-Parks and Allison, throughout those three weeks, "starv[ing], tortur[ing], beat[ing], [and] psychologically mess[ing] with" J.S.  (Tr. at 12.)  He detailed numerous examples of Smith-Parks and Allison's heinous conduct against the young child.  The state submitted the video recordings as exhibits in support of its motion, and the trial court viewed those recordings in-camera.

{¶ 6}   In his investigation, Detective Rubenstahl also learned that Smith-Parks, a long-time Columbus resident, was brought up through the foster system, and she had no criminal record.  Smith-Parks was gainfully employed but quit that employment shortly before engaging in the criminal conduct.  Detective Rubenstahl further testified that the investigative unit "heard from family members that she has made comments of wanting to kill herself and her child.  And she is also currently pregnant, so there's concern for that child."  (Tr. at 21.)  He also indicated he had no knowledge of any "evidence of [Smith-

Parks] acting out physically aggressive towards anybody [] in the community" other than J.S. (Tr. at 21.)

{¶ 7} Within one hour after the bond hearing, the trial court filed an entry resolving the state's motion. Based on its review of the evidence presented at the hearing, including its in-camera review of the video recordings, the court found, by clear and convincing evidence, the following:

> 1. the proof is evident or the presumption great that the accused committed the offenses with which she is charged; the accused was observed in recordings physically abusing the decedent child, torturing the decedent child, engaging in waterboarding the decedent child, mentally and emotionally abusing the decedent child, and denying nutrition to the decedent child; the decedent child's cause of death listed as blunt force trauma.
>
> 2. the accused poses a substantial risk of serious physical harm to any person, including herself and her unborn child, or to the community; and
>
> 3. that no release conditions will reasonably assure the safety of that person or the community.

(May 8, 2025 Entry at 1.)

{¶ 8} As to the above second and third findings, the trial court noted that it had "considered all available information," including the following:

> a. the nature and circumstances of the offenses charged: this case involves the murder and child endangering of the defendant's four-year-old child, offenses of violence, and was committed by prolonged torture;
>
> b. the weight of the evidence of the accused: the accused is observed engaging in the aforementioned conduct on video recording;
>
> c. the history and characteristics of the accused: the defendant told family that she intended to kill herself and her unborn child; and
>
> d. the nature and seriousness of the danger to any person or the community that would be posed by the accused's release.

(*Id.* at 1-2.)

{¶ 9} Based on these findings, the trial court granted the state's request and ordered Smith-Parks held without bail pending trial. Smith-Parks timely appeals from this order.

## II. Assignment of Error

{¶ 10} Smith-Parks assigns the following sole assignment of error for our review:

> Appellant's constitutional right to bail was violated when the trial court denied bail by finding that Appellant posed a substantial risk of causing future serious physical harm to a person or the community and that no release conditions would reasonably assure the community's safety without clear and convincing evidence to support the finding.

## III. Discussion

{¶ 11} In her sole assignment of error, Smith-Parks contends the trial court erred in denying her bail pending trial. This assignment of error is not well-taken.

{¶ 12} This court reviews a trial court's denial of bail[1] for an abuse of discretion. *State v. Howard*, 2024-Ohio-5785, ¶ 13 (10th Dist.). An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A decision is unreasonable if there is no sound reasoning process that would support the decision. An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard. And an unconscionable decision is one that affronts the sense of justice, decency, or reasonableness. *Campbell v. 1 Spring, L.L.C.*, 2020-Ohio-3190, ¶ 9 (10th Dist.). Additionally, this court has noted that "while the standard is deferential, we are to consider whether the trial court improperly applied the governing law, used an erroneous legal standard, relied upon clearly erroneous findings of fact, or lacked a sound reasoning process in its ruling." *Howard* at ¶ 15.

{¶ 13} The Ohio Constitution provides that "[a]ll persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony

---

[1] "Bail is security for the appearance of an accused to appear and answer to a specific criminal or quasi-criminal charge in any court or before any magistrate at a specific time or at any time to which a case may be continued, and not depart without leave." R.C. 2937.22(A). The terms "bail" and "bond" are often used interchangeably. *State v. Howard*, 2024-Ohio-5785, ¶ 12, fn. 1 (10th Dist.).

where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." Ohio Const., art. I, § 9. It also directs the General Assembly to set standards by law to determine whether that exception applies in a particular case. *Howard* at ¶ 16, citing Ohio Const., art. I, § 9. The General Assembly set forth these standards in R.C. 2937.222.

{¶ 14} Under R.C. 2937.222, a trial court may deny bail to a person accused of a criminal offense involving certain serious felonies after holding a hearing and making certain findings. *Howard* at ¶ 17, citing R.C. 2937.222(A). At such a hearing, the rules of evidence "do not apply to the presentation and consideration of information." R.C. 2937.222(A). This means "in determining whether the evidence presented by the state supports the denial of pretrial bail under R.C. 2937.222, a trial court need not consider whether such evidence would be admissible at trial." *Howard* at ¶ 21. Because this case involves felonies covered under R.C. 2937.222(A)—including aggravated murder not charged as a capital offense—the central issue before the trial court was whether the state established the criteria necessary for the court to deny bail pending trial.

{¶ 15} Pursuant to R.C. 2937.222(B), a trial court cannot deny bail to a person awaiting trial unless it finds the state established, "by clear and convincing evidence," all three of the following elements: "[(1)] the proof is evident or the presumption great that the accused committed the [serious felonies] with which [she] is charged, . . . [(2)] the accused poses a substantial risk of serious physical harm to any person or to the community, and . . . [(3)] no release conditions will reasonably assure the safety of that person and the community." "[C]lear and convincing evidence" means "that measure or degree of proof that is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *State v. Townsend*, 2008-Ohio-6518, ¶ 8 (10th Dist.), citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 16} Here, Smith-Parks does not challenge the trial court's finding concerning whether the proof is evident or the presumption great that she committed the charged serious felonies. Indeed, the extensive violence Smith-Parks inflicted on J.S. was documented on video recordings. She argues, instead, the court abused its discretion as to

its findings concerning her substantial risk to herself or others and whether any conditions of release could assure safety. We disagree.

{¶ 17} In determining whether the accused "poses a substantial risk of serious physical harm to any person or to the community and whether there are conditions of release that will reasonably assure the safety of that person and the community," R.C. 2937.222(C) requires a trial court to consider "all available information" regarding the following:

> (1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;
>
> (2) The weight of the evidence against the accused;
>
> (3) The history and characteristics of the accused, including, but not limited to, both of the following:
>
> (a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;
>
> (b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

R.C. 2937.222(C).

{¶ 18} Subfactor one of R.C. 2937.222(C) required the trial court to consider the "nature and circumstances of the offense charged, including whether the offense is an offense of violence." Evidence submitted to the court showed that Smith-Parks physically and mentally abused, tortured, starved, and ultimately killed her own four-year-old son. The violent and sadistic nature of Smith-Parks' behavior, committed for multiple weeks, demonstrated her substantial risk to the community. The court expressly noted this evidence of prolonged torture and offenses of violence Smith-Parks committed against her

own young son.  Viewed generally, the nature and circumstances of this case are nothing short of shocking.

{¶ 19}  Subfactor two of R.C. 2937.222(C) required the trial court to consider the "weight of the evidence against" Smith-Parks.  As to this factor, the court noted that "the accused is observed engaging in the [] conduct on video recording."  (May 8, 2025 Entry at 2.)  Smith-Parks does not dispute that these video recordings document her crimes against her child.  Thus, the weight of the evidence against her was overwhelming.

{¶ 20}  Last, we address the evidence concerning subfactors three and four of R.C. 2937.222(C), the "history and characteristics of the accused" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  As to these factors, Smith-Parks asserts the trial court did not consider her background, including her ties to the community and her lack of a criminal history.  Smith-Parks also asserts that because there was no evidence of her acting physically aggressive towards anyone, other than J.S., there was no evidence of her posing a substantial risk of serious physical harm to any person or the community.

{¶ 21}  The fact that the trial court did not weigh certain relevant circumstances as Smith-Parks saw fit does not mean it did not duly consider those circumstances.  In its decision, the court expressly indicated it considered all available information relevant to this inquiry.  Further, although J.S. is now deceased, and consequently Smith-Parks cannot harm him further, this does not mean she does not pose a great risk to others in the community.  As to this issue, the court specifically cited the evidence that Smith-Parks told family members that she intended to kill herself and her unborn child.  According to Smith-Parks, the court's reference to this statement as demonstrating her dangerousness was improper "because she might choose to terminate her pregnancy" pursuant to her right under Ohio Const. art. I, § 22.  (Merit brief at 16.)  This assertion mischaracterizes the evidence.  Such a statement reasonably demonstrates Smith-Parks' ongoing mental health troubles and the danger those troubles directly pose to herself and her unborn child.  And evidence that she threatened to "kill" herself and her unborn child does not show she was contemplating a decision to abort her pregnancy; instead, it more accurately could be

viewed as a malicious threat to her own life and derivatively her unborn child.[2] Moreover, although not specifically cited by the court in reference to her history and characteristics, the evidence of Smith-Parks' unceasing sadistic conduct, over the course of multiple weeks, towards her own child, reasonably reflects personal character devoid of empathy and a propensity to harm others.

{¶ 22} Considering the foregoing, we find evidentiary support for the trial court's determinations that the proof is evident or the presumption great that Smith-Parks committed the offenses of which she is charged, that her future risk to the community is substantial and serious, and that no release conditions will reasonably assure the safety of herself or others. Therefore, we conclude the trial court did not abuse its discretion in denying Smith-Parks bail pending trial. Accordingly, we overrule her sole assignment of error.

## IV. Disposition

{¶ 23} Having overruled Smith-Parks' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., concurs in judgment only.
BOGGS, J., concurs.

JAMISON, P.J., concurring in judgment only.

{¶ 24} Concurring only in the judgment that the trial court did not abuse its discretion in denying appellant bail, I write separately to express my concern with completely denying a criminal defendant bail based solely on the yet-to-be-proven criminal allegations.

{¶ 25} Every criminal defendant enjoys the right to the presumption of innocence. R.C. 2901.05(A). Moreover, the Ohio Constitution mandates that "[a]ll persons shall be bailable by sufficient sureties, except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." Ohio Const., art. I, § 9. In certain limited circumstances, the trial court can deny a criminal defendant bail if it makes certain findings. Two of those findings include that the state proved, by clear and

---

[2] At oral argument, Smith-Parks' counsel indicated she is no longer pregnant. But this information was not before the trial court. It, therefore, does not alter our review of the trial court's decision.

convincing evidence, that the accused poses a substantial risk of serious physical harm to any person or to the community, and that no release conditions will reasonably assure the safety of that person and the community. R.C. 2937.222(B).

{¶ 26} To be sure, the allegations in this case are extremely egregious. However, I submit that, in this case, where the victim was not a member of the general public, there should be additional facts or evidence to support the aforementioned findings. Denying a criminal defendant bail based on nothing more than the nature and strength of the state's allegations necessarily implicates the defendant's right to a presumption of innocence.

{¶ 27} The state cites to two cases in its argument in which denials of bail to defendants with no criminal history were upheld. In *State v. Nash*, 2023-Ohio-51, ¶ 8 (3d Dist.), the appellate court affirmed the trial court's denial of bail for the defendant. In finding that the defendant posed a substantial risk of serious physical harm to a specific person or the community at-large, the trial court noted that the defendant had mental health issues; his actions of shooting a gun 47 to 60 times, killing a person, appeared to be random; and he also shot at law enforcement officers to prevent them from apprehending him. *Id.* at ¶ 7. In finding that no conditions of release would reasonably assure the safety of the community, the Third District noted that there was no apparent motive for the defendant's actions from which the trial court could determine he would not act in a similar nature in the future, and that the defendant still could cause serious physical harm without a firearm. *Id.* at ¶ 8.

{¶ 28} In *State v. Howard*, 2024-Ohio-5785 (10th Dist.), this court affirmed the denial of bail of a 19-year-old defendant who had no prior criminal history, was a lifetime Columbus, Ohio resident, owned a lawn-care business, and had family ties to the community. In finding that the defendant posed a substantial risk of serious physical harm to any person or to the community, and that no conditions of release would reasonably assure the safety of the community, the trial court pointed to several facts. First, the defendant was accused of indiscriminately firing multiple rounds into a group of people in a public place. Furthermore, his actions caused the deaths of two people, including his own sister. *Id.* at ¶ 35. Second, following the shooting, the defendant threatened a man at gunpoint and stole his cell phone. *Id.* Finally, after the incident, the defendant fled to Florida, where he was eventually arrested. *Id.* at ¶ 25, 35.

{¶ 29} A review of both *Nash* and *Howard* reveals facts and evidence in addition to the egregious nature of the crimes that are absent in this case. In both *Nash* and *Howard*, the defendants randomly fired a gun multiple times in a public place, causing deaths that they did not intend to cause. Here, although egregious, appellant's actions were directed at a specific target and did not endanger members of the public. Furthermore, the defendants in both *Nash* and *Howard* committed violent crimes following the initial murders. In *Nash*, the defendant fired his gun at police officers who sought to arrest him. In *Howard*, the defendant robbed a man of his cell phone at gunpoint. Here, there is no evidence that appellant committed any criminal offenses, let alone violent felonies, following the criminal acts for which she is charged. Finally, the defendants in both *Nash* and *Howard* took steps to evade arrest, demonstrating further contempt for the law and the justice system. In *Nash*, the defendant fired shots at responding officers. In *Howard*, the defendant fled to Florida. Here, there is no evidence that appellant sought to evade capture.

{¶ 30} In short, both *Nash* and *Howard* are distinguishable as they both have several additional facts that clearly indicate the defendants posed a significant risk to the public, and that no conditions of release would eliminate that risk. Those additional facts are not present here. Appellant has no criminal history. She allegedly engaged in a pattern of severe abuse of a member of her household, not a random community member. Outside of the egregious nature of her alleged conduct, there is no evidence that she poses a significant risk to the community at-large.

{¶ 31} Indeed, in *Howard*, we stated that, "it is well-established in Ohio that '[a]n inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in [by the trier of fact].' " *Howard*, 2024-Ohio-5785, at ¶ 30 (10th Dist.), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus. We went on to state, "For this reason, '[a] finding of substantial risk may not be based on an inference . . . in order to transform a speculative risk into a substantial risk.' " (Further quotation marks deleted and citations omitted.) *Id.*, quoting *State v. Hartley*, 2011-Ohio-2530, ¶ 27 (1st Dist.). Although any assessment of a defendant's risk to the community is going to involve some level of speculation, the denial of bail to appellant was not supported by additional facts or circumstances like those outlined in *Nash* and

*Howard.* The denial of bail in this case transforms a speculative risk into a substantial risk, based on an inference that appellant did, in fact, engage in the egregious conduct alleged, and an inference that she would direct this type of conduct toward members of the public.

{¶ 32} Based on the foregoing, I would have denied the state's motion to hold appellant without bail. However, although I would have reached a different conclusion than the trial court, I do not believe its decision rises to the level of an abuse of discretion.

{¶ 33} For these reasons, I respectfully concur in judgment only.

_____